704 A.2d 617

Barbara MORGAN and Joseph Morgan,
her husband, Appellants,

v.

John A. MacPHAIL, M.D., Appellee.

Kathleen Breslin WALKER and James Walker, Appellants,

v.

Albert ROSE, D.P.M., and Curt D. Miller, M.D., Appellee.

Supreme Court of Pennsylvania.

Argued March 5, 1997.

Decided Dec. 24, 1997.

Jeffrey Pribanic, Vincent A. Coppola, White Oak, for Barbara and Joseph Morgan.

John A. Bass, Pittsburgh, for John A. MacPhail, M.D.

Stanley B. Gruber, Philadelphia, for Kathleen and James Walker.

James I. Devine, Philadelphia, for Curt D. Miller, M.D.

Edward Griffith, Wayne, for Albert Rose, D.P.M.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

*OPINION OF THE COURT*

CASTILLE, Justice.

The sole issue before this Court in these consolidated appeals is whether the doctrine of informed consent should be expanded to include the non-surgical administration of medication where the claimed injury results from the method and location of administration of the medication rather than the medication itself. Because we find that the doctrine of informed consent applies only to surgical procedures, we affirm the Superior Court holdings in both cases.

A. *Morgan*

On October 20, 1988, appellant Barbara Morgan fell and fractured two ribs. The pain of the injury did not subside with time; therefore, Mrs. Morgan sought treatment from Dr. MacPhail. On December 14, 1988, Dr. MacPhail performed an intercostal nerve block [1] in an effort to alleviate Mrs. Morgan's pain. Later that day, Mrs. Morgan experienced weakness and shortness of breath and telephoned appellee. She then reported to the hospital emergency room where she learned that she suffered a right pneumothorax [2] as a result of the intercostal nerve block procedure.

Mrs. Morgan and her husband filed suit against Dr. Mac-Phail claiming that he failed to obtain informed consent prior to performing the procedure. Dr. MacPhail filed preliminary objections in the nature of a demurrer arguing that informed consent is necessary only for surgical or operative procedures, and the trial court granted a demurrer. Mrs. Morgan appealed to the Superior Court, and the Superior Court affirmed.

B. *Walker*

On February 12, 1991, appellant Kathleen Breslin Walker began treatment with appellee Albert Rose, D.P.M., for com-

1. An intercostal nerve block is a procedure whereby a local anesthetic is injected into the area around the ribs.

2. A pneumothorax is a collapse of the lung.

plaints of pain in her right heel. Dr. Rose injected a long-acting steroid into Mrs. Walker's right superficial adventitious bursa.[3] On April 15, 1991, Dr. Rose administered a second steroid injection into Mrs. Walker's right superficial adventitious bursa. Mrs. Walker's pain had not subsided by June 6, 1991 when she consulted appellee Curt Miller, M.D., an orthopedic surgeon. He diagnosed "Achilles tendonitis" and treated the condition. In August of 1991, Mrs. Walker's Achilles tendon ruptured. Dr. Miller surgically repaired the tendon, and Mrs. Walker developed a skin slough over the incision behind her right heel.[4]

Mrs. Walker and her husband filed suit against Drs. Rose and Miller claiming that Dr. Rose failed to obtain informed consent prior to injecting the steroids into Mrs. Walker's right superficial adventitious bursa and that Dr. Miller failed to inform Mrs. Walker that she could develop a skin slough as a result of the surgery. Following a three-day trial, the jury returned a defense verdict. Specifically, the jury found that Dr. Rose was negligent, but his negligence was not a substantial factor in causing the injury. The jury also determined that no reasonable person in Mrs. Walker's position would have considered the risk of a skin slough in her decision to undergo the surgery and, therefore, found in favor of Dr. Miller. Post-trial relief was denied. Mrs. Walker appealed to the Superior Court, and the Superior Court affirmed.

It has long been the law in Pennsylvania that a physician must obtain informed consent from a patient before performing a surgical or operative procedure. *See Sinclair v. Block,* 534 Pa. 563, 633 A.2d 1137 (1993); *Gray v. Grunnagle,* 423 Pa. 144, 223 A.2d 663 (1966). Informed consent, however, has not been required in cases involving non-surgical procedures.[5]

---

3. The right superficial adventitious bursa is located behind the Achilles tendon between the tendon and the skin.

4. A skin slough is an area of the skin that becomes necrotic and does not heal.

5. *See, e.g., Sinclair v. Block,* 534 Pa. 563, 633 A.2d 1137 (1993)(informed consent doctrine does not apply to obstetrician's use of forceps

Neither the Pennsylvania legislature nor courts have defined surgical or operative procedure; however, "operate" is defined in *Taber's Cyclopedic Medical Dictionary* 1256 (16th ed.1989) as "[t]o perform an excision or incision, or to make a suture on the body or any of its organs to restore health." "Surgery" is defined in *Black's Law Dictionary* 1442 (6th ed.1990) as "that branch of medical science which treats of mechanical or operative measures for healing diseases, deformities or injuries." "Operation" is defined as "an act or succession of acts performed upon the body of a patient, for his relief or restoration to normal conditions, by the use of surgical instruments as distinguished from therapeutic treatment by the administration of drugs or other remedial measures." *Id.* at 1092.

 The procedures involved in the instant appeals do not fall within the definition of surgical or operative procedures because neither involved an excision or incision or the use of surgical instruments; rather, they involved the therapeutic administration of drugs. In fact, the procedures are more closely analogous to the introduction of medication through an intravenous needle or line because the instant procedures and the intravenous use of medication both involve the use of needles to inject medication rather than the use of surgical instruments. Courts applying Pennsylvania law have not required informed consent in cases involving intravenous administration of medication. *Wu v. Spence*, 413 Pa.Super. 352, 605 A.2d 395 (1992)(no informed consent needed for

during natural childbirth); *Hoffman v. Brandywine Hospital*, 443 Pa.Super. 245, 661 A.2d 397 (1995)(informed consent not required for a blood transfusion); *Matukonis v. Trainer*, 441 Pa.Super. 570, 657 A.2d 1314, *appeal granted*, 542 Pa. 648, 666 A.2d 1057 (1995)(doctrine inapplicable to chiropractic manipulation of patient's neck); *Dible v. Vagley*, 417 Pa.Super. 302, 612 A.2d 493 (1992), *appeal denied*, 535 Pa. 619, 629 A.2d 1380 (1993) (informed consent not required for radiation treatments); *Wu v. Spence*, 413 Pa.Super. 352, 605 A.2d 395 (1992)(no informed consent needed for intravenous administration of antibiotics); *Boyer v. Smith*, 345 Pa.Super. 66, 497 A.2d 646 (1985)(doctrine not applicable to oral administration of prescription drugs). *See also, Karibjanian v. Thomas Jefferson University Hospital*, 717 F.Supp. 1081 (E.D.Pa.1989)(doctrine not applicable to intravenous administration of prescription drugs).

intravenous administration of antibiotics). *Accord, Karibjani-
an v. Thomas Jefferson University Hospital,* 717 F.Supp. 1081
(E.D.Pa.1989)(doctrine not applicable to intravenous adminis-
tration of prescription drugs).

The rationale underlying requiring informed consent for a
surgical or operative procedure and not requiring informed
consent for a non-surgical procedure is that the performance
of a surgical procedure upon a patient without his consent
constitutes a technical assault or a battery because the patient
is typically unconscious and unable to object. *Gray v. Grun-
nagle,* 423 Pa. at 155, 223 A.2d at 668–69. Appellants here
argue that the traditional battery or assault-based theory
should be abandoned in favor of a negligence standard. The
basis for their argument is their assertion that a patient has
the right to determine the scope and direction of medical
treatment no matter which form the treatment takes, whether
surgical or non-surgical. The patient, appellants urge, has the
right to make an informed choice as to electing to undergo a
medical procedure after having been presented with the alter-
natives and the risks attendant to each alternative. This
argument, however, flies in the face of the traditional battery
theory. It is the invasive nature of the surgical or operative
procedure involving a surgical cut and the use of surgical
instruments that gives rise to the need to inform the patient of
risks prior to surgery. *Id.* Neither of the procedures per-
formed in the instant appeals were invasive in nature as both
involved the injection of medication which does not rise to the
same level of bodily invasion as surgery.[6]

**6.** Recently, our legislature codified the law of informed consent in the
Healthcare Services Malpractice Act which states:

> (a) Except in emergencies, a physician owes a duty to a patient to
> obtain the informed consent of the patient or the patient's authorized
> representative prior to conducting the following procedures:
>> (1) Performing surgery, including the related administration of
>> anesthesia.
>> (2) Administering radiation or chemotherapy.
>> (3) Administering a blood transfusion.
>> (4) Inserting a surgical device or appliance.
>> (5) Administering an experimental medication, using an experi-
>> mental device or using an approved medication or device in an
>> experimental manner.

Given that prior case law mitigates against the application of the doctrine of informed consent to the instant cases, and adding to that the recent legislation embodying the legislative branch's codification of the law of informed consent which would not require informed consent in these cases, we can conceive of no sound reason to expand the doctrine of informed consent judicially to cover these cases, only to have the recent legislation effectively overturn such a decision as of January 25, 1997. Accordingly, the decisions of the Superior Court in both cases are affirmed.

NIGRO, J., files a dissenting opinion.

NIGRO, Justice, dissenting.

The majority today perpetuates an unfounded distinction in the law of informed consent between surgical and non-surgical procedures. Our lower courts have urged the Court to abolish this distinction and the legislature has enacted legislation superseding lower court precedent based upon it. Since there is no basis to require informed consent before surgery but not before other medical procedures, I would reverse the lower courts' decisions and allow Appellants to pursue their claims.

The Court discussed the doctrine of informed consent in *Gray v. Grunnagle*, 423 Pa. 144, 223 A.2d 663 (1966). The *Gray* case produced a plurality opinion with a majority of the

40 P.S. § 1301.811–A, effective January 25, 1997.

This legislation expands in several material ways the applicability of the doctrine of informed consent to cover procedures and treatments not previously included in case law. For example, prior to this legislation, courts had held that the informed consent doctrine did not to apply to radiation or chemotherapy (*Dible v. Vagley*, 417 Pa.Super. 302, 612 A.2d 493 (1992), *appeal denied*, 535 Pa. 619, 629 A.2d 1380 (1993)), or to blood transfusions unless incident to surgery (*Hoffman v. Brandywine Hospital*, 443 Pa.Super. 245, 661 A.2d 397 (1995)). Such procedures, however, now require informed consent under the new statute.

While this new legislation is not applicable to the instant appeals because the injuries complained of occurred prior to the effective date, even under this legislation informed consent would not be required in these cases. Informed consent under the statute is only required for the administration of medication where the medication being administered is experimental or is administered in an experimental manner. Neither appellant has asserted either of these situations which would arguably require this Court to look to the statute for guidance.

Court holding that whether a patient consented to surgery was a question for the jury. Even if the Court's plurality opinion were binding precedent, it in no way limits the doctrine of informed consent to surgical procedures. While *Gray* involved an operation, the plurality reasoned that a doctor must obtain consent because otherwise he would commit a battery upon the patient. Since a battery is an intentional touching without consent, under *Gray,* other touchings should also require informed consent.

This principle was recognized in *Cooper v. Roberts,* 220 Pa.Super. 260, 286 A.2d 647 (1971), where the Superior Court evaluated a jury instruction addressing a doctor's duty to disclose risks to a patient who underwent a gastroscopic examination. The court held that a doctor must disclose risks that a reasonable man would consider material to his decision to undergo treatment. While there was a dispute as to whether the examination was a surgical procedure, the court stated that the duty to disclose applied whether or not the treatment at issue was technically operative. *Id.* at 266–67 n. 2, 286 A.2d at 650 n. 2.

It appears that the notion that informed consent is not required for non-surgical procedures developed from the opinion of a Superior Court judge in *Malloy v. Shanahan,* 280 Pa.Super. 440, 421 A.2d 803 (1980). The court rejected a claim that informed consent was required when prescribing a therapeutic drug. In the opinion, the authoring judge quoted the trial court's statement that "the doctrine of informed consent has been applied only to suits involving surgical operations...." *Id.* at 443, 421 A.2d at 804. The second judge on the panel concurred in the result and the third wrote a dissenting opinion maintaining that informed consent was required.

Presented again with the issue raised in *Malloy,* the Superior Court stated in *Boyer v. Smith,* 345 Pa.Super. 66, 72, 497 A.2d 646, 649 (1985), that informed consent "should continue to be limited" to cases involving surgery. Like *Malloy, Boyer* involved a patient who was allegedly not informed of the risks of oral medication. The court stated that to expand the

210

application of informed consent to such a case would depart from the battery rationale espoused in *Gray. Id.*

In discussing *Boyer*, a district court found that the *Boyer* court went beyond the facts before it in stating that informed consent is only required for surgical procedures. *Karibjanian v. Thomas Jefferson Univ. Hosp.*, 717 F.Supp. 1081, 1084 (E.D.Pa.1989). The *Boyer* court found that informed consent was not required when prescribing oral medication because there was no touching implicating a battery. Thus, the district court aptly stated that:

> The middle ground over which the *Boyer* court leapt includes a case like the plaintiff's [in *Karibjanian* ] in which the patient is injected with a substance. A touching occurs, perhaps a painful one, yet it is something less than surgery.

*Id.* The district court concluded that it was reasonable to impose a duty of informed consent when a patient challenges the need for an injection. *Id.*

Nonetheless, as the majority recognizes, the Superior Court has repeatedly held that informed consent is only required for surgical procedures.[1] The majority fails to mention that the Superior Court has also stated that it finds the surgical/ nonsurgical distinction without basis. *See, e.g., Hoffman v. Brandywine Hosp.*, 443 Pa.Super. 245, 661 A.2d 397 (1995)(noting the artificiality of the distinction and one judge concurring solely to emphasize her discomfort with it); *Stover v. Assoc. of Thoracic and Cardiovascular Surgeons*, 431 Pa.Super. 11, 635 A.2d 1047 (1993)(noting the court's trouble with the distinc-

1. The Supreme Court has addressed issues related to informed consent twice in cases involving surgeries and once in a case involving a nonsurgical procedure. In the surgery cases, *Gouse v. Cassel*, 532 Pa. 197, 615 A.2d 331 (1992) and *Moure v. Raeuchle*, 529 Pa. 394, 604 A.2d 1003 (1992), the Court did not consider the application of informed consent to non-surgical procedures. In the non-surgery case, *Sinclair v. Block*, 534 Pa. 563, 570–71, 633 A.2d 1137, 1140–41 (1993), the Court held that informed consent is not required to use forceps in delivering a baby. In rejecting the patient's argument that the use of forceps involves a touching, the Court stated that informed consent presumes that the patient has a choice to make. Since labor is inevitable, the Court held that the informed consent doctrine does not apply to the natural delivery process. To the extent *Sinclair* also required a surgery for informed consent to apply, I disagree with the Court's decision.

tion); *Wu v. Spence*, 413 Pa.Super. 352, 605 A.2d 395 (1992)(stating that it may be time for this Court to reconsider the battery theory in *Gray* ). I agree with our lower court that the surgical/non-surgical distinction is unfounded. Many non-surgical procedures involve a touching and may be technical batteries without informed consent just like surgery. Thus, under the current battery theory of informed consent, informed consent should be required for medical procedures beyond surgery. This is especially true today with technological advances that are invasive but no longer require a surgical cut.

The legislature's recent amendments to the Healthcare Services Malpractice Act, 40 Pa. Stat. §§ 1301.101—1301.1006, support that the Court should abolish the distinction between surgical and non-surgical procedures. The amendments in part require informed consent before the administration of radiation or chemotherapy, blood transfusions, and experimental medication. *Id.* § 1301.811–A. This legislation supersedes Superior Court precedent that held that informed consent was not required for radiation or blood transfusions because they are non-surgical. *See Hoffman v. Brandywine Hospital*, 443 Pa.Super. 245, 661 A.2d 397 (1995)(informed consent not required for blood transfusion after surgery); *Dible v. Vagley*, 417 Pa.Super. 302, 612 A.2d 493 (1992), *appeal denied*, 535 Pa. 619, 629 A.2d 1380 (1993)(informed consent not required for radiation). Thus, the legislature has implicitly rejected a distinction between surgical and non-surgical procedures in imposing a statutory duty to provide informed consent.

Other states have imposed informed consent requirements based upon a negligence theory rather than a battery theory.[2] These states have generally recognized that the failure to get informed consent is not a technical battery because the doctor's omission is not due to a willful intent to injure the

**2.** *See, e.g., Gorab v. Zook*, 943 P.2d 423 (Colo.1997); *Wecker v. Amend*, 22 Kan.App.2d 498, 918 P.2d 658 (1996); *Carr v. Strode*, 79 Hawai'i 475, 904 P.2d 489 (1995); *Faya v. Almaraz*, 329 Md. 435, 620 A.2d 327 (1993); *Arato v. Avedon*, 5 Cal.4th 1172, 23 Cal.Rptr.2d 131, 858 P.2d 598 (1993); *Jacobs v. Painter*, 530 A.2d 231 (Me.1987); *Wilkinson v. Vesey*, 110 R.I. 606, 295 A.2d 676 (1972).

patient. *See Malloy v. Shanahan*, 280 Pa.Super. 440, 421 A.2d 803 (1980)(Hoffman, J., dissenting and citing cases). In addition, the faulty conduct—the failure to inform—is not a touching. *See id.* Thus, other states have decided that a doctor's duty to disclose the risks of medical treatment to the patient is an element of the duty of reasonable care. *See id.* This view comports with the concept underlying informed consent—that the patient has the right to determine what shall be done to his body. I agree that a negligence theory provides a stronger basis for the informed consent doctrine than a battery theory.

In sum, there is no basis to distinguish between surgical and non-surgical procedures in the law of informed consent. I would thus abolish this distinction and in addition, I would join other jurisdictions and adopt a negligence theory to support informed consent requirements.[3]

---

**3.** I further disagree with the majority's statement that a judicial expansion of the doctrine of informed consent today would be "effectively overturn[ed]" by the amendments to the Healthcare Services Malpractice Act. The legislature's decision to impose a statutory duty upon doctors to obtain informed consent before certain procedures does not preclude the Court from imposing a duty to disclose for other procedures under a negligence theory of liability.