# Yadouga v. Cruciani

C.P. of Lackawanna County, no. 02 CV 4342.

*Gary Solomon,* for plaintiffs.
*Maureen E. Kelly,* for defendant.

NEALON, *J.*, April 26, 2004—The defendant physician in this malpractice action has appealed the special discovery master's decision compelling the defense to answer certain interrogatories and document requests. For the reasons set forth below, the defense appeal will be denied as to 11 discovery inquiries in dispute, but granted in whole or in part as to four other objections.

## I. FACTUAL BACKGROUND

Plaintiffs have instituted a wrongful death action against defendant Mark Cruciani M.D. and allege that

Dr. Cruciani negligently performed multiple trigger point injections on October 24, 2000, which caused the decedent to suffer spinal cord hemorrhage and ultimately die on February 21, 2001. (See dkt. entry no. ¶¶4-7, 14-17.) During discovery, Dr. Cruciani filed objections to various interrogatories and requests for production of documents that were served upon him by the plaintiffs, and, as a result, plaintiffs presented a motion to compel to the special discovery master pursuant to Lacka. Cty. R.C.P. 4000.1(a). (*Id.,* nos. 9-10.) By order dated October 2, 2003, the master sustained Dr. Cruciani's objections to interrogatories nos. 4, 9, 13, 14, 21(b), 27 and 28 and requests for production of documents nos. 16 and 17, but granted the plaintiffs' motion to compel with respect to interrogatories nos. 15-20, 29-32, 41, 43-45, 49-50, 52, and 56-59 and requests for production of documents nos. 6, 9-13, 18, 20 and 21. (*Id.,* no. 14.)

In accordance with Lacka. Cty. R.C.P. 4000.1(b), Dr. Cruciani filed a timely de novo appeal of the special discovery master's ruling with regard to interrogatories nos. 29-32, 41(g), 45, and 56-59 and requests for production of documents nos. 6, 9-13, 18 and 20. (*Id.,* no. 15.) Dr. Cruciani objects to the foregoing discovery requests on the basis that the information or documents sought are "beyond the scope of permissible discovery; and/or not relevant to the subject matter of the action; and/or . . . sought in bad faith; and/or would cause unreasonable annoyance, oppression, burden or expense to the defendant, and/or would require the making of an unreasonable investigation by the defendant." (*Id.,* nos. 9-10.) The parties have submitted their supporting and opposing memoranda of law, and following the completion of oral

argument on April 16, 2004, this matter became ripe for disposition. (*Id.,* nos. 1-17.)

## II. DISCUSSION

### (A) *Discovery Standard*

The purpose of the Pennsylvania "discovery rules is to prevent surprise and unfairness and to allow a fair trial on the merits." *Dominick v. Hanson,* 753 A.2d 824, 826 (Pa. Super. 2000). To that end, Pa.R.C.P. 4003.1 provides that "as a general rule, discovery is liberally allowed with respect to any matter, not privileged, which is relevant to the cause being tried." *George v. Schirra,* 814 A.2d 202, 204 (Pa. Super. 2002). A discovery request is not objectionable on the grounds that it seeks "an opinion or contention that relates to a fact or the application of law to fact" or that "the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Pa.R.C.P. 4003.1(b), (c). Furthermore, any limitations or restrictions upon discovery should be construed narrowly. *McAndrew v. Donegal Mutual Insurance Co.,* 56 D.&C.4th 1, 7 (Lacka. Cty. 2002); *Schwab v. Milks,* 8 D.&C.4th 557, 558 (Lacka. Cty. 1990).

In determining whether a discovery request seeks relevant information, the term "relevant" has greater breadth and flexibility than it does for purposes of admissibility at trial. *George,* 814 A.2d at 205-206 (holding that although the documents requested "may not ultimately be admissible at trial or may not prove germane to the

matters that will be litigated, we believe the relevancy standard applicable to discovery matters has been met."); *Fitt v. General Motors Corp.,* 13 D.&C.4th 336, 338 (Lacka. Cty. 1992). Except for those instances where the plaintiff has served discovery to aid in the preparation of a complaint, see 9 Goodrich-Amram 2d §4003.1(a):7, the party objecting to discovery generally bears the burden of establishing that the requested information or documents are not relevant or discoverable.[1] *Reusswig v. Erie Insurance,* 49 D.&C.4th 338, 341 (Monroe Cty. 2000); *Winck v. Daley Mack Sales Inc.,* 21 D.&C.3d 399, 404 (Somerset Cty. 1980); *Tataren v. Little,* 2 D.&C.3d 651, 655-56 (Phila. Cty. 1977). Any doubts regarding relevancy are to be resolved in favor of allowing discovery, *Davis v. Starosta,* 62 D.&C.4th 76, 80 (Northampton Cty. 2002), and if there is any conceivable basis upon which a discovery request may be relevant, a motion to compel such discovery should be granted. *Klovensky v. Moore,* 57 D.&C.4th 370, 373 (Franklin Cty. 2002); *Fitt, supra.*

Discovery may be prohibited if it is irrelevant, sought in bad faith, causes unreasonable annoyance, embarrassment, oppression, burden or expense to the responding party, or requires unreasonable investigation by the respondent. See Pa.R.C.P. 4011. Litigants should expect

---

1. However, the objector does not bear the burden of establishing that the information sought is protected from discovery by the attorney-client privilege. *McAndrew,* 56 D.&C.4th at 10. Rather, "[b]ecause of the importance of the privilege to the administration of justice, the burden of proof is upon the party asserting that the disclosure of information would not violate the attorney-client privilege." *Gould v. City of Aliquippa,* 750 A.2d 934, 937 (Pa. Commw. 2000); *McAndrew, supra.*

that "[a]lmost any discovery request causes some annoyance, embarrassment, oppression, burden or expense." *D.S. v. DePaul Institute,* 32 D.&C.4th 328, 334 (Allegheny Cty. 1996). Consequently, the proper inquiry is whether the party objecting to discovery has established *unreasonable* annoyance, embarrassment, oppression, burden or expense associated with the discovery request. *Merrifield v. Gavern,* 10 D.&C.4th 541, 542 (Lacka. Cty. 1991). Based upon this standard of review, we will consider the plaintiffs' discovery requests and Dr. Cruciani's objections seriatim.

## (B) *Defendant's Prior Testimony*

Interrogatories nos. 29 and 30 request certain information relating to testimony provided by Dr. Cruciani "in a medical malpractice or other type of personal injury action, either as a defendant or as a witness." Dr. Cruciani contends "that the information sought is irrelevant" and that the pertinent inquiry should be "limited to whether Dr. Cruciani has ever testified as a defendant in a medical malpractice claim which arose prior to his treatment of the plaintiff in the instant case, and in which he was charged with a breach of the standard of care in providing the same type of injection therapy involved in the instant action." (Dkt. entry no. 16, p. 2.) Dr. Cruciani posits that testimony in cases other than malpractice claims involving injection therapy exceeds the bounds of permissible discovery.

A party or witness may be cross-examined concerning prior trial or deposition testimony which is inconsistent with the testimony being offered in the case under consideration. See *Burton-Lister v. Siegel, Sivitz and*

*Lebed Associates,* 798 A.2d 231, 240 (Pa. Super. 2002), *appeal denied,* 570 Pa. 681, 808 A.2d 568 (2002) (physician's deposition testimony in a prior suit was admissible for impeachment purposes under Rule 4020(a)(1)); *Fitt,* 13 D.&C.4th 339 (expert witness' prior court testimony and depositions were relevant and reasonably calculated to lead to the discovery of admissible evidence); *Best v. Marmo,* 89 Lacka. Jur. 30, 31-32 (1987) (expert's statements of medical opinions in other cases could be used for impeachment purposes under Rule 4020(a)(1)). It is conceivable that Dr. Cruciani performed trigger point injections on a patient who was injured in an accident or fall and that he later provided trial or deposition testimony regarding those injections in his patient's personal injury suit. The manner in which those therapeutic injections were performed by Dr. Cruciani may be at variance with the technique that he employed when injecting the decedent. In the event that Dr. Cruciani discussed trigger point injections during his testimony in those personal injury actions, such testimony or depositions would be reasonably calculated to lead to the discovery of impeachable evidence.

Thus, interrogatories nos. 29 and 30(a)-(c) and (e) seek relevant information under Pa.R.C.P. 4003.1. Interrogatory no. 30(d) attempts to discover "the amount of compensation" that Dr. Cruciani received for his trial or deposition testimony in other litigation. Dr. Cruciani's remuneration for his testimony in a given case would clearly be admissible in that particular suit to demonstrate partiality toward the party calling him in that case. See *Henery v. Shadle,* 443 Pa. Super. 331, 338, 661 A.2d 439, 443 (1995), *appeal denied,* 542 Pa. 670, 668 A.2d

1133 (1995). However, evidence pertaining to the expert witness fee received by Dr. Cruciani in earlier cases has no relevance to the issues in this pending action. Hence, interrogatory no. 30(d) does not seek discoverable information and Dr. Cruciani's objection to that inquiry will be sustained.

## (C) *Defendant's Malpractice History*

In interrogatories nos. 31 and 32, the plaintiffs demand information relating to every lawsuit "in which it was alleged that [Dr. Cruciani] breached the required standard of care with regard to [his] professional practice." Dr. Cruciani argues that these questions are overly broad and should be confined to cases "in which he was charged with negligence in performing the same type of injection therapy" at issue in this action. (Dkt. entry no. 16, p. 3.) Plaintiffs counter that their interrogatories are appropriate since "Dr. Cruciani may have been subject to prior lawsuits pertaining to his performance of therapeutic injections" and "may have given testimony in another case which conflicts with the actions he took with [decedent]." (*Id.,* no. 17, p. 4.)

We agree with Dr. Cruciani that the plaintiffs' request for detailed information on all malpractice claims ever filed against him exceeds the scope of permissible discovery under Pa.R.C.P. 4003.1. See *Fuller v. Jackson,* 50 D.&C.3d 628, 630-32 (Cumberland Cty. 1987) (in a malpractice action alleging negligent perforation of the esophagus during surgery, plaintiff's interrogatory concerning all malpractice claims filed against defendant was "overbroad," and defendant would be required to identify only those claims alleging that he "perforated a

patient's esophagus during dilation or otherwise."). Information regarding other malpractice suits involving Dr. Cruciani's performance of therapeutic injections will arguably lead to the discovery of admissible evidence such as statements or admissions by Dr. Cruciani in pleadings or written discovery relating to the proper procedures for injections. Cf. *Marini v. K-Mart Corp.,* 22 D.&C.3d 110, 111-14 (Chester Cty. 1982) (in suit charging that store falsely and maliciously accused plaintiff of retail theft, defendant was required to answer discovery as to whether the defendant's store had previously been sued by any person who had been arrested for shoplifting since the information sought was relevant to plaintiff's claim that the store routinely filed false criminal charges against patrons without the intent to pursue them and for the mere purpose of exposing the accused to embarrassment, distress and expense). Furthermore, by virtue of Dr. Cruciani's court-ordered answers to interrogatories nos. 29 and 30, the plaintiffs will have access to other testimony by Dr. Cruciani in personal injury actions involving therapeutic injections, including those matters which do not allege negligence by him. In light of the fact that the plaintiffs are entitled to obtain these two sources of potentially relevant information, additional inquiries into other malpractice actions will not lead to the discovery of admissible evidence. Therefore, Dr. Cruciani's objections to interrogatories nos. 31 and 32 will be sustained to the extent that they request information relating to malpractice claims which do not involve therapeutic injections.[2] See *Hietz v. General*

2. As a practical matter, the plaintiffs can easily obtain an inventory of all lawsuits ever filed against Dr. Cruciani in Lackawanna County

*Motors Corp.,* 57 D.&C.2d 4, 6-7 (York Cty. 1972) (in a wrongful death action against a product manufacturer, defendant's interrogatory requesting the details of every lawsuit to which the decedent was a party was too broad and was limited by the court to those lawsuits involving personal injury claims filed by the decedent).

There may be occasions where the entire malpractice history of the defendant physician is relevant and discoverable in a professional negligence action. For instance, with the advent of corporate liability, a hospital has an independent duty "to select and retain only competent physicians." *Thompson v. Nason Hospital,* 527 Pa. 330, 339, 591 A.2d 703, 707 (1991). As a result, a hospital may be corporately negligent if it furnishes staff privileges to physicians "with knowledge of, or failure to learn of, their malpractice history." *Corrigan v. Methodist Hospital,* 869 F. Supp. 1208, 1211 (E.D. Pa. 1994). See also, 42 U.S.C. §1135 (obligating hospitals to access the National Practitioner Data Bank prior to granting or renewing clinical privileges to a physician in order to determine whether monetary payments have been made in settlement or satisfaction of malpractice claims against the physician, and creating an evidentiary presumption that the hospital had knowledge of any information reported to the data bank if the hospital fails to request the required information from the data bank). Indeed, we have previously held that evidence of prior malpractice lawsuits involving a physician may be admissible in a suit alleging corporate negligence against a

---

by simply entering his name into the clerk of judicial records' computerized index and retrieving the captions and docket numbers for all litigation involving Dr. Cruciani.

hospital which granted privileges to that physician. See *Gurevitz v. Piczon,* 42 D.&C.4th 308, 323-25 (Lacka. Cty. 1999). Although a physician's complete malpractice record would be relevant and discoverable in a corporate liability suit, no such claim is at stake in this case. Based upon the foregoing reasoning, Dr. Cruciani will be required to identify only those malpractice claims involving injection therapy. See 9 Goodrich-Amram 2d §4003.1(a):10a n.66, 74.

### (D) *Defense Experts' Forensic Services*

Dr. Cruciani also objects to interrogatory no. 41(g) requesting that each defense expert identify "[a]ny litigation in which he has been consulted," including "a listing of those matters to which he testified and the name of the court involved and the court term and number." According to Dr. Cruciani, the requested information "clearly is beyond the scope of that discovery permitted by Rule 4003.5." (Dkt. entry no. 16, p. 3.) Plaintiffs have not addressed the propriety of this discovery inquiry in their opposing brief. (*Id.,* no. 17.)

In Pennsylvania, a party may challenge the credibility of an expert witness by demonstrating that [s]he has a bias, partiality, interest or relationship which might affect the expert's testimony. *Brady v. Ballay, Thornton, Maloney Medical Associates Inc.,* 704 A.2d 1076, 1083 (Pa. Super. 1997), *appeal denied,* 555 Pa. 738, 725 A.2d 1217 (1998). See also, *Keperling v. Rothacker,* 63 D.&C.4th 344, 351-52 (Lancaster Cty. 2003) (counsel could cross-examine expert about the relative amounts of time he "spent treating patients versus evaluating medical-legal matters"). As Justice Musmanno aptly re-

marked, an expert witness should be required to "lift his visor so that the jury could see who he was, what he represented, and what interest, if any, he had in the results of the trial, so that the jury could appraise his credibility." *Goodis v. Gimbel Brothers,* 420 Pa. 439, 445, 218 A.2d 574, 577 (1966). "Clearly, one who has significant economic interests connected to one side of litigation has reason for shading opinion testimony, and may even have an ideological frame of reference." Hon. Mark I. Bernstein, *Expert Testimony in Pennsylvania,* 68 Temp.L.Rev. 699, 704 (Summer 1995). As a consequence, many attorneys seek "the discovery of an expert witness' financial records in order to establish interest, bias, or prejudice . . . [and] to show how much of an expert's income is generated from testifying, how many times an expert has testified, and an expert's previous associations with opposing attorneys in the current lawsuit." M. M. Ketchum, *Experts: Witnesses for the Prosecution? Establishing a Expert Witness's Bias Through the Discovery and Admission of Financial Records,* 63 U.Mo.K.C. L.Rev. 133 (Fall 1994).

In *Mohn v. Hahnemann Medical College and Hospital,* 357 Pa. Super. 173, 515 A.2d 920 (1986), *appeal discontinued,* 515 Pa. 582, 527 A.2d 542 (1987), the defense medical expert was questioned at trial with respect to income he had earned performing "medico-legal" services and providing "treatment of patients [and] consultations at the request of other physicians . . . ." *Id.* at 178, 515 A.2d at 923. In addressing the propriety of that interrogation, the Superior Court declined to "condone the type of extensive disclosure of an expert's fee generating cases, especially since they were not related to the

case at bar (except tangentially) nor were all of them, to coin a phrase utilized by the parties, 'medico-legal' cases." *Id.* at 179, 515 A.2d at 923. Reasoning that cross-examination about "the expert's total income, unrelated . . . to the 'results of the trial' " was improper, the *Mohn* court "conclude[d] that, under the facts of this case, the nexus between [the expert's] compensation for *all* services rendered (which included work for private and governmental agencies, patients and other law firms) from 1979 to 1983, *exclusive of those received for work performed for defense counsel's law firm,* and his credibility on the witness stand is tenuous at best." *Id.* at 181, 515 A.2d at 925. (emphasis in original)

The Pennsylvania appellate courts subsequently tempered the holding in *Mohn* by expanding rather than restricting the scope of expert witness inquiry with regard to forensic services. See Bernstein, 68 Temp. L.Rev. at 704 ("[w]hile some limits are warranted, if *Mohn* is interpreted broadly, Pennsylvania law has probably exceeded necessity and prevents the jury from hearing useful, factual information."). In *Smith v. Celotex Corp.,* 387 Pa. Super. 340, 564 A.2d 209 (1989), an asbestos manufacturer sought a new trial based upon "the trial court's [alleged] error in allowing broad cross-examination of one of appellant's medical expert witnesses regarding his prior testimony on behalf of other asbestos companies and the fees he earned therefrom" and "contend[ed] that the [trial] court violated the rule of *Mohn . . . ." Id.* at 348, 564 A.2d at 213. The Superior Court rejected the defense argument and affirmed the lower court ruling by stating that "[b]oth expert witnesses did testify as to their involvement in other matters and were examined in an

attempt to reveal their bias in favor of plaintiffs or defendants, including the approximate amount they received as fees for their services." *Id.* at 349, 464 A.2d at 213. Accord *Fitt,* 13 D.&C.4th at 338-39 (ordering defense experts in automobile design defect litigation to produce "information as to other product liability cases in which the defense experts testified on behalf of other defendant-automobile manufacturers" since such information could "possibly expose any potential partiality or bias on the part of these experts.").

Several years later, the Superior Court revisited this narrow issue and considered whether "the trial court committed reversible error, requiring the award of a new trial, when it permitted [defendant] to cross-examine Dr. Smith, the expert retained by appellants, as to income earned as an expert witness in assignments unrelated to the instant case." *Spino v. John S. Tilley Ladder Co.,* 448 Pa. Super. 327, 351, 671 A.2d 726, 738 (1996), *aff'd,* 548 Pa. 286, 696 A.2d 1169 (1997). In refusing to grant a new trial, the *Spino* court concluded that counsel's query concerning the amount of income earned by the expert from his forensic consulting business "was marginally relevant to the issue of bias." *Id.* at 353, 671 A.2d at 739. Shortly thereafter, the court in *Tiburzio-Kelly v. Montgomery,* 452 Pa. Super. 158, 681 A.2d 757 (1996), upheld the cross-examination of an expert with regard to the fees he had received for expert services in a given year. Noting that *Mohn* "did not announce a per se rule regarding the extent of permissible cross-examination into a witness' potential bias," the court held that since the expert had referenced his recent policy of contributing his forensic fees to a neighborhood health center, it

was appropriate for opposing counsel "to inquire about the extent or history of that virtue" by establishing that he had earned more than $100,000 in expert witness income during the year that he authored his report at issue. *Id.* at 183, 681 A.2d at 769-70.

More recently, in *Coward v. Owens-Corning Fiberglas Corp.*, 729 A.2d 614 (Pa. Super. 1999), *appeal granted*, 560 Pa. 705, 743 A.2d 920 (1999), the defense alleged that the trial court had abused its discretion by allowing the defense medical expert to be questioned "that asbestos defendants had paid him over one million dollars for expert evaluation of product defect claims in litigation during the [previous] 20 year period." *Id.*, 729 A.2d at 625. Once again, the Superior Court observed that counsel may cross-examine an expert on "those aspects of the witness' financial interest that are demonstrably probative of any bias he may harbor in favor of the law firm retaining him, or in favor of the parties litigating claims in industry-wide litigation." *Id.* at 625-26. The *Coward* court further found that the trial court did not abuse its discretion in permitting the examination in question.

The Lackawanna County courts have historically required defense medical experts to produce information regarding forensic and testimonial services that they have provided exclusively for the defense. See *e.g., Clifford v. Leonardi*, 104 Lacka. Jur. 22, 25-28 (2002); *Best*, 89 Lacka. Jur. at 32. In recognition of the admonition in *Mohn* that inquiry into an expert's total income for *all* professional services rendered (including treatment of private patients and consultations for other physicians) is overly intrusive, our local courts have limited such

discovery to expert services provided solely for one side of litigation (*i.e.,* the plaintiff or defendant). *Id.* Accord, *Kelly v. Montgomery,* 22 D.&C.4th 1, 11 (Phila. Cty. 1994). Consistent with that rationale, evidence of other instances in which Dr. Cruciani's experts have provided forensic services for the defense is probative of the experts' association with the defense flank of litigation.

Plaintiffs' demand for an itemization of *all* cases in which Dr. Cruciani's experts have "testified" or "been consulted" would require the experts to compile and reveal matters in which they furnished testimonial or consulting services for their own patients or acted as an expert witness for the plaintiff/claimant (*e.g.,* their patients' personal injury, worker's compensation or social security disability claims). As worded, the interrogatory thereby seeks information which would not be relevant to the expert's alleged bias or partiality toward the defense. Nevertheless, a chronicle of all cases in which the defense experts have provided forensic services solely for the defense would arguably be relevant to their affiliation with one side of litigation. *Clifford, supra.* Therefore, plaintiffs' motion to compel with regard to interrogatory no. 41(g) will be granted only to the extent that Dr. Cruciani's expert witnesses must provide a recitation of all cases in which they have provided expert witness services on behalf of the defense.

(E) *Basis for Expert Opinion*

Interrogatory no. 45 states "[i]dentify the exact page of each particular medical record, laboratory result, diagnostic study, radiology examination and/or other data upon which the opinion of your expert is based in whole

or in part." Dr. Cruciani submits that this inquiry is "beyond the scope of discovery permitted by Rule 4003.5" and "would cause unreasonable annoyance, oppression or burden" to answer. (Dkt. entry no. 16, p. 3.) Plaintiffs' brief does not address Dr. Cruciani's argument that the discovery rules do not obligate an expert to identify the "exact page" of each document [s]he has reviewed or relied upon in forming an opinion.

Pa.R.C.P. 4003.5(a)(1) entitles a party to discover the identities of the opposing party's expert witnesses, the subject matter of the experts' testimony, a summary of the grounds for each expert opinion, and the substance of the facts and opinions to which the experts are expected to testify. Experts usually respond to Rule 4003.5(a)(1) inquiries by authoring a report addressing those matters, and as per Pa.R.C.P. 4003.5(c), the experts' direct testimony may not exceed the fair scope of the experts' reports. Reports authored by expert witnesses typically identify the medical records, pleadings, discovery materials, depositions and other documents that the experts have reviewed in formulating their opinions, and an interrogatory which asks an adversary's expert to identify the medical records and other materials reviewed by the expert does not exceed the scope of discovery permitted by Rule 4003.5(a). However, requiring the expert to identify "the exact page" of each such document would be unduly burdensome and necessitate an unreasonable investigation by the expert. Accordingly, the defense experts will not be required to identify the exact page of each medical record or document reviewed and will merely be compelled to itemize generally the materials considered in forming an opinion.

### (F) *Informed Consent Inquiries*

Interrogatories nos. 56, 57, 58 and 59 seek detailed information about Dr. Cruciani's discussions with the decedent concerning "the risks associated with trigger point injections" and "alternative treatments to multiple trigger point injections." Under Pennsylvania common law, a physician is not required to secure the informed consent of a patient prior to injecting a steroid or local anesthetic since such an injection does not involve a surgical or operative procedure. See *Morgan v. MacPhail,* 550 Pa. 202, 206-207, 704 A.2d 617, 619-20 (1997). Section 811-A of the former Health Care Services Malpractice Act (HCSMA) expanded the doctrine of informed consent to cover certain procedures, including the administration of anesthesia, radiation, chemotherapy or blood transfusions, the insertion of a surgical device or appliance, the administration of an experimental medication, or the use of either an experimental device or an approved medication or device in an experimental manner. See 40 P.S. §1301.811-A (a)(1)-(5) (repealed and reenacted at 40 P.S. §1303.504 (a)(1)-(5) (effective March 20, 2002)). Section 811-A of the HCSMA which was in effect at the time of the decedent's injection on October 24, 2000, has been interpreted as not requiring a patient's informed consent as a condition precedent to the injection of a long acting steroid and local anesthetic. *Morgan,* 550 Pa. at 207 n.6, 704 A.2d at 620 n.6 (stating that while the HCSMA was not applicable "because the injuries complained of occurred prior to the effective date, even under this legislation informed consent would not be required in these cases."). Accord *Stalsitz v. Allen-*

*town Hospital,* 814 A.2d 766, 777-78 (Pa. Super. 2002) (informed consent not required for tissue plasminogen activator (TPA) therapy or angiogram since they involved the injection of a drug and dye and were considered non-surgical).

Although Count II of the complaint originally asserted a cause of action for lack of informed consent, (dkt. entry no. 1, ¶¶18-23), the plaintiffs later stipulated to the withdrawal of their informed consent claim. (*Id.,* no. 11.) Based upon Pennsylvania statutory and common law recognizing the inapplicability of the doctrine of informed consent to therapeutic injection therapy, and in light of the plaintiffs' withdrawal of their informed consent claim, we can perceive of no relevance to interrogatories nos. 56-59 concerning physician-patient discussions about the risks of and alternatives to trigger point injections. For that reason, we will sustain Dr. Cruciani's objections to those interrogatories.

### (G) *Request for "Data and Tangible Things"*

In their requests for production of documents, the plaintiffs have secured copies of Dr. Cruciani's "complete office records, computer records, file and bills relating to the care and treatment of decedent," all "x-rays of decedent," "written statements (signed or unsigned)," "bills, reports and records from other hospitals, physicians, medical providers and/or facilities" regarding the decedent, "records of telephone and/or other communication between [Dr. Cruciani] and decedent and [his] office staff and decedent," "information and data given by [Dr. Cruciani] to his insurance carrier and/or representative," "[t]he entire claims file concerning any and

all information regarding [Dr. Cruciani] and this incident," and "medical texts and articles which [Dr. Cruciani] and [his] expert witnesses referred to or relied upon with regard to the medical occurrence at issue herein." (Dkt. entry no. 17, exhibit B, nos. 1-5, 15-17.) In document request no. 6, the plaintiffs demand that Dr. Cruciani also produce "[a]ll other writings, memoranda, data and tangible things which relate directly or indirectly to the incident set forth in plaintiffs' complaint, except those things restricted by Pa.R.C.P. 4003.3." (*Id.,* no. 6.) Dr. Cruciani contends that the use of phrases such as "data and tangible things" which relate "directly or indirectly" to this incident render the request "too nonspecific" and "oppressive and burdensome." (*Id.,* no. 16, pp. 3-4.)

Regrettably, the plaintiffs' "first request for production of documents" does not contain a definitional section clarifying the foregoing terms so as to enable the recipient to respond in a reasonable and meaningful manner. To quote Dr. Cruciani: "What is 'directly or indirectly'? An exemplar of the hypodermic needle used may fall into this overly broad category." (*Id.,* p. 4.) As phrased, the document request is too generalized and all-inclusive and would be unreasonably burdensome to answer. Thus, Dr. Cruciani's objections to document request no. 6 will be granted without prejudice to the plaintiffs' right to resubmit a more narrow and specific inquiry with regard to these items.

(H) *Defense Expert Materials*

Plaintiffs' requests nos. 9-13 demand production of the defense experts' "reports and drafts of reports," "com-

pensation agreements" and "resume[s]," the "medical literature" upon which the experts will rely in support of their opinions, and the "demonstrative evidence which will be utilized in support of the experts' trial testimony." Dr. Cruciani objects to these requests and asserts that "Rule 4003.5 requires only an answer to an interrogatory or in lieu thereof a report of the expert" such that "[t]here is no requirement or authority" which obligates the defense experts to produce the documents sought in requests nos. 9-13. In that vein, Dr. Cruciani avers that his experts are simply required to state the subject matter of their testimony and a summary of the grounds for their opinions in compliance with Rule 4003.5(a)(1).

Contrary to Dr. Cruciani's position, Pa.R.C.P. 4003.5 (a)(2) authorizes the court to allow additional expert witness discovery "[u]pon cause shown." See *Monteiro v. Dow Chemical,* 19 Phila. 221, 231 (1989) ("It seems safe to assume that the Supreme Court expects that Rule 4003.5(a)(2) will be used to reduce the risk of trial by ambush."). Trial courts throughout Pennsylvania, including those in Lackawanna County, have relied upon Rule 4003.5(a)(2) to order further discovery beyond the parameters of Rule 4003.5(a)(1). See *e.g., Boyd v. Milton S. Hershey Medical Center,* 39 D.&C.4th 337, 339-41 (Dauphin Cty. 1998) (party entitled to discover the scientific foundation for an opposing expert opinion in contemplation of a *Frye* hearing); *Fitt, supra* (products liability defense experts ordered to itemize other instances in which they testified on behalf of defendant manufacturers); *Schwab, supra* (defense experts ordered to identify all prior occasions on which they were represented by defense counsel in other matters).

We conclude that the requisite cause exists under Rule 4003.5(a)(2) for the defense to answer the document requests in dispute. Plaintiffs clearly are entitled to copies of the defense expert reports under Rule 4003.5 (a)(1)(b). Since earlier drafts of an expert's report may contain statements or opinions which were later deleted from or modified in the final product, drafts of expert reports may be useful in cross-examination of an expert. See *Scarpa v. Tyler Memorial Hospital,* no. 00 CV 2229, Nealon, J. (Lacka. Cty. June 13, 2002) (ordering production of preliminary or provisional drafts of expert reports "since such information may be relevant to attack the weight of the expert's final opinion at trial or to impeach the expert with a prior inconsistent statement"). As discussed above, the remuneration received by the defense experts via their fee agreements is unquestionably relevant, see *Mohn,* 357 Pa. Super. at 181, 515 A.2d at 924-25, as are the expert's qualifications set forth in the expert's curriculum vitae. Additionally, the medical literature and demonstrative evidence sought are likewise discoverable under Rule 4003.5(a)(2).

## (I) *Appointment Schedules/Discovery Documents*

Finally, document request no. 18 seeks the production of any "diaries, calendars, scheduling books, etc. maintained by [Dr. Cruciani] and/or [his] office staff with regard to the dates of care rendered to decedent" whereas no. 20 asks for "[a]ll documents identified in defendant's answers to interrogatories." At the time of oral argument, defense counsel confirmed that Dr. Cruciani has already produced his office's sign-in sheet and schedule book with other patients' names redacted and that there are no

other documents which are responsive to request no. 18. Dr. Cruciani objects to request no. 20 on the basis that it obligates him to furnish documents that are referenced in his interrogatory answers but which are not within his possession or control. Since Pa.R.C.P. 4009.1 requires a party to produce or copy only those documents "which are in the possession, custody or control of the party or person upon whom the request or subpoena is served," Dr. Cruciani will be directed to answer request no. 20 merely as to those documents which are in his possession, custody or control. An appropriate order follows.

## ORDER

And now, April 26, 2004, upon consideration of "defendant's appeal motion from an order of the special discovery master," the memoranda of law submitted by the parties and the oral argument of counsel on April 16, 2004, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that:

(1) Defendant's appeal under Lacka. Cty. R.C.P. 4000.1(b) is dismissed and the plaintiffs' motion to compel is granted with respect to interrogatories nos. 29, 30(a), (b), (c) and (e), 31 and 32 to the extent that they concern malpractice claims involving therapeutic injections, and 41(g) insofar as the expert witnesses must provide an itemization of all forensic services on behalf of the defense in litigation, and requests for production of documents nos. 9, 10, 11, 12, 13 and 20 provided that the documents are within the possession, custody or control of the defendants;

(2) Defendant's appeal under Lacka. Cty. R.C.P. 4000.1(b) is granted and the plaintiffs' motion to compel is denied with regard to interrogatories nos. 30(d), 45 to the extent that it demands the identification of "the exact page," and 56, 57, 58 and 59 and requests for production of documents no. 6; and

(3) Defendant's discovery appeal with respect to requests for production of documents no. 18 is dismissed as moot.