**Lillian M. BELL, Administrator of the Estate of Lynn Christine Sewak, Deceased, and Lillian M. Bell as Representative of the Estate of the Intestate Heirs, Appellants**

v.

**Joseph C. WILLIS, DC; Brad Todaro, DC; The Chiropractic Center, PC; and Allegheny Advanced Chiropractic, LLC.**

Superior Court of Pennsylvania.

Argued July 23, 2013.

Filed Nov. 8, 2013.

Harry S. Cohen, Pittsburgh, for Bell and Estate of Sewak, appellants.

Ronald M. Puntil, Jr., Pittsburgh, for Chiropractic Center and Willis, appellees.

George P. Kachulis, Pittsburgh, for Allegheny Advanced Chiropractic and Todaro, appellees.

BEFORE: FORD ELLIOTT, P.J.E., OTT and MUSMANNO, JJ.

OPINION BY FORD ELLIOTT, P.J.E.:

Lillian M. Bell, administratrix of the estate of Lynn Christine Sewak, deceased, and as representative of the estate of the intestate heirs, appeals from the judgment entered August 31, 2012, in this chiroprac-

tic malpractice case. Finding no error, we affirm.

In October 2006, Ms. Sewak treated with both Brad Todaro ("Todaro") and Joseph Willis ("Willis"), chiropractors. She presented with complaints of neck pain, headaches, and dizziness. Todaro and Willis performed cervical neck manipulations/mobilizations. On October 24, 2008, the morning after her last visit with Willis, Ms. Sewak suffered a vertebral artery dissection and massive stroke. The stroke resulted in Ms. Sewak being in a "locked-in" state, *i.e.*, fully conscious and cognitively aware but unable to move except for her eyes. Ms. Sewak eventually died approximately 18 months later, on May 2, 2008, due to a massive infection.

A complaint was filed on January 15, 2008, alleging that appellees were negligent and that their negligence increased the risk of Ms. Sewak suffering a vertebral injury/stroke. Appellant retained expert witnesses to testify that the cervical manipulations/mobilizations were the cause of the vertebral artery dissection and stroke. Appellant also included claims for lack of informed consent for failure to inform Ms. Sewak of the dangers and potential side effects of the procedures.

Prior to trial, the trial court granted appellees' motions *in limine* to exclude appellant's lack of informed consent claims, as well as wrongful death and survival claims. Following a nine-day jury trial, a verdict was returned in favor of appellees. Post-trial motions were denied, and this timely appeal followed. Appellant complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A., and the trial court has filed an opinion.

Appellant presents the following issues for this court's review:

1. Whether the trial court abused its discretion and/or committed an error of law by dismissing [appellant]'s cause of action based on lack of informed consent against chiropractors[?]
2. Whether the trial court abused its discretion and/or committed and [sic] error of law by denying [appellant]'s motion to amend complaint to reflect a survival act cause of action[?]

Appellant's brief at 4.

Pennsylvania law is clear that a lack of informed consent claim cannot lie against a chiropractor for performing chiropractic manipulations, because they are non-surgical procedures. As this court stated in *Matukonis v. Trainer*, 441 Pa.Super. 570, 657 A.2d 1314 (1995), *appeal granted*, 542 Pa. 648, 666 A.2d 1057 (1995):

[A] cause of action for failure to obtain informed consent has been steadfastly limited to surgical or operative medical procedures. Since chiropractors are statutorily proscribed from performing any surgical procedures, 63 P.S. § 625.102, and appellant does not allege that appellee performed a surgical or operative procedure, a cause of action against a chiropractor for failure to obtain informed consent before performing non-surgical procedures will not lie as a matter of law.

*Id.* at 1315 (citations and quotation marks omitted).

In *Morgan v. MacPhail*, 550 Pa. 202, 704 A.2d 617 (1997), our supreme court reaffirmed that informed consent is not required in cases involving non-surgical procedures. In that case, involving consolidated appeals, the appellants received an intercostal nerve block procedure (whereby a local anesthetic is injected into the area around the ribs) and steroid injections, respectively. *Id.* at 204–205, 704

A.2d at 618–619. Our supreme court refused to expand the doctrine of informed consent to non-surgical procedures:

> The rationale underlying requiring informed consent for a surgical or operative procedure and not requiring informed consent for a non-surgical procedure is that the performance of a surgical procedure upon a patient without his consent constitutes a technical assault or a battery because the patient is typically unconscious and unable to object.

*Id.* at 207, 704 A.2d at 620, citing *Gray v. Grunnagle*, 423 Pa. 144, 155, 223 A.2d 663, 668–669 (1966).

> It is the invasive nature of the surgical or operative procedure involving a surgical cut and the use of surgical instruments that gives rise to the need to inform the patient of risks prior to surgery. Neither of the procedures performed in the instant appeals were invasive in nature as both involved the injection of medication which does not rise to the same level of bodily invasion as surgery.

*Id.*, citing *Gray, supra* (footnote omitted).

Mr. Justice Nigro dissented, opining that there is no basis to require informed consent before surgery but not before other medical procedures. Justice Nigro opined that the surgical/non-surgical distinction is unfounded and observed that many non-surgical procedures involve a touching and may constitute technical batteries in the absence of informed consent just like surgery. *Id.* at 210–211, 704 A.2d at 622. Justice Nigro would abolish the surgical/non-surgical distinction and join other states including California and Colorado in imposing informed consent requirements based on a negligence theory rather than a battery theory. *Id.* at 211–212, 704 A.2d at 622.

We note that the MCARE Act, 40 P.S. § 1303.504, expanded the applicability of the informed consent doctrine to cover certain procedures and treatments not previously included in case law, such as blood transfusions and radiation or chemotherapy. However, MCARE does not apply to chiropractors, only physicians. A physician is defined by the Medical Practice Act of 1985 as, "A medical doctor or doctor of osteopathy." 63 P.S. § 422.2. Chiropractors are governed by the Chiropractic Practice Act, 63 P.S. § 625.101 *et seq.*, which does not impose a duty of informed consent.

Appellant urges us to follow Wisconsin's lead in requiring chiropractors to obtain a patient's informed consent. *See Hannemann v. Boyson*, 282 Wis.2d 664, 691, 698 N.W.2d 714, 728 (2005) (holding that the scope of a chiropractor's duty to obtain informed consent is the same as that of a medical doctor; "while the specific treatments and procedures utilized in the practice of chiropractic and the practice of medicine may differ, there is no reason why the practitioners of these disciplines should not have the same obligation to disclose the material risks of the procedures and treatments they utilize."). While appellant makes a cogent argument, this court is bound by existing precedent, including *Morgan* and *Matukonis*.

> As an intermediate appellate court, this Court is obligated to follow the precedent set down by our Supreme Court. It is not the prerogative of an intermediate appellate court to enunciate new precepts of law or to expand existing legal doctrines. Such is a province reserved to the Supreme Court.

*Moses v. T.N.T. Red Star Express*, 725 A.2d 792, 801 (Pa.Super.1999), *appeal denied*, 559 Pa. 692, 739 A.2d 1058 (1999) (citations omitted). *See also Matukonis*, 657 A.2d at 1315 n. 2 ("We are well aware

480

that the Commonwealth falls into a decidedly minority position in adhering to the theory of battery for informed consent cases, and there we will stay until such time as our Supreme Court revisits the issue.") (citations omitted). Based on existing case law, the trial court did not err in dismissing appellant's claims for lack of informed consent.

 Appellant also argues that she should have been permitted to amend the complaint to include a cause of action based on the Survival Act.

> The Pennsylvania survival statute provides that "[a]ll causes of action or proceedings, real or personal, shall survive the death of the plaintiff...." 42 Pa. C.S.A. § 8302. In such a case, a survival action may be brought by the administrator of the decedent's estate to recover the loss to the estate resulting from the tort.

*Holt v. Lenko,* 791 A.2d 1212, 1215 (Pa.Super.2002), citing *Kiser v. Schulte,* 538 Pa. 219, 226, 648 A.2d 1, 4 (1994). "In a survival action, the statute of limitations begins to run on the date of the injury, as though the decedent were bringing his or her own lawsuit." *Id.,* citing *Moyer v. Rubright,* 438 Pa.Super. 154, 651 A.2d 1139, 1141 (1994). A two-year statute of limitations applies to an action to recover damages for injuries or death to a person resulting from the wrongful act or negligence of another. 42 Pa.C.S.A. § 5524(2).

Here, Ms. Sewak died on May 2, 2008, and the estate was substituted as the plaintiff approximately two months later. For survival actions, the cause of action accrues and the two-year statute of limitations begins to run, at the latest, at death. *Pastierik v. Duquesne Light Company,*

514 Pa. 517, 526 A.2d 323 (1987). Appellant did not seek to amend her complaint to add a Survival Act claim until October 14, 2011, well outside the applicable two-year statute of limitations. As such, the trial court did not err in refusing to allow appellant to amend her complaint to include a cause of action under the Survival Act.[1]

Judgment affirmed.

---

1. At any rate, the jury rendered a defense verdict so appellant was not prejudiced by the trial court's decision not to allow an additional count under the Survival Act. In fact, as appellant concedes, the issue is only relevant if the case is remanded for re-trial. (Appellant's brief at 25.)