467 A.2d 1353

**Miriam BULMAN and Paul Bulman, her
husband, Appellants,**

**v.**

**Franklin J. MYERS, D.D.S.**

Superior Court of Pennsylvania.

Argued Sept. 21, 1983.

Nov. 18, 1983.

Petition for Allowance of Appeal Denied March 12, 1984.

----

Barbara Ellen Sarkin, Philadelphia, for appellants.

Patrick O. McDonald, Philadelphia, for appellee.

Before CIRILLO, JOHNSON and CERCONE, JJ.

CIRILLO, Judge:

In April, 1976 the appellant, Miriam Bulman, first came under the care of the appellee, Franklin J. Myers, D.D.S., for the care and treatment of impacted wisdom teeth. On or about April 14, 1976 the appellant was admitted to Jeanes Hospital for the purpose of surgically removing her maxillary and mandibular left and right third molars. Following surgery, which was performed by the appellee, the appellant suffered a marked loss of temperature, taste and pain sensations in her tongue and a slurring of speech.

The appellant brought a trespass action against the appellee, seeking damages for injuries sustained as a result of the surgery being performed without her "informed consent." No assertion of negligent performance was ever advanced by the appellant. This matter was tried before the Honorable Harry A. Takiff and a jury on July 24 and 25, 1980. The appellee did not testify in his own behalf, although the appellant introduced sections of the appellee's deposition transcript into evidence. Following a verdict in favor of the appellee, the appellant filed motions for a new trial and judgment n.o.v.[1] These post-trial motions were subsequently denied and this appeal followed.

On appeal, the appellant avers that the trial judge erred in failing to charge the jury that a patient cannot formulate a valid, informed consent to a surgical procedure when disclosures of the risks of surgery are made by a nurse assistant and not by the operating surgeon. As regards this area of the law, our Court has stated:

> The law in this Commonwealth is that where a patient is mentally and physically able to consult about his condition, in the absence of an emergency, his 'informed consent' ..., is a prerequisite to a surgical operation by his physician. *Cooper v. Roberts*, 220 Pa.Super. 260, 265, 286 A.2d 647, 649 (1971). Thus, 'it will be no defense for a surgeon to prove that the patient had given his consent, if the consent was not given with a true understanding of

---

1. Post-trial motions were not filed until August 25, 1981, well beyond the ten day period mandated by Pa.R.C.P. 227.1. However, the issues presented are devoid of merit so we address them for disposition.

the nature of the operation to be performed, the seriousness of it, the organs of the body involved, the disease or incapacity sought to be cured, and the possible results.' *Gray v. Grunnagle*, 423 Pa. 144, 166, 223 A.2d 663, 674 (1966) (quoting R.E. Powell, *Consent to Operative Procedures*, 21 Md.L.Rev. 189 (1966)). The test of informed consent to be applied by the fact-finder is whether the physician disclosed all those facts, risks and alternatives that a reasonable man in the situation which the physician knew or should have known to be the plaintiff's would deem significant in making a decision to undergo the recommended treatment. *Cooper v. Roberts, supra* [220 Pa.Super.] at 267, 286 A.2d at 650. In *Bowers v. Garfield*, 382 F.Supp. 503 (E.D.Pa.1974), the federal district court characterized this statement in *Cooper* as a codification of an "objective standard" of informed consent. *DeFulvio v. Holst*, 272 Pa.Super. 221, 224–225, 414 A.2d 1087, 1089 (1979).[2]

■ At trial, the appellant testified that any information that she received concerning possible complications came only from Mrs. Myers who was the nurse/assistant to her dentist/husband. The appellee, through his deposition, however, testified that he explained the risks of surgery to the appellant. In addition, Mrs. Myers testified in detail as to the substance of the pretreatment information she communicated to the appellant. The appellant asserts that only the appellee, as operating physician, can effectively relate all the information necessary for an informed consent. The appellant cites *Gray v. Grunnagle*, 423 Pa. 144, 223 A.2d 663 (1966), as support for this claim. However, as Judge Takiff expressed in his opinion:

> Our reading of *Gray* discloses that the holding of the Court in that seminal case was based upon the *scope* of the information which plaintiff had been given, rather

2. Where the patient can be shown to be mentally and physically able to consult about his condition, in the absence of an emergency, the consent of that patient is clearly a prerequisite to any surgical procedure by his physician and any operation without such consent may be held to be a technical assault. *Sauro v. Shea*, 257 Pa.Super. 87, 390 A.2d 259 (1978).

than the identity of the person making the communication. Plaintiff Gray testified it was his understanding that he would only be undergoing exploratory surgery when, in fact, the procedure undertaken was far more extensive and could and did result in paralysis. *Gray* held that where consent was obtained by one doctor, a written consent form routinely obtained and another person performed the surgery, the issue of the sufficiency of the information communicated upon which the patient's consent was obtained was for the jury.

(Trial Court Slip Op. at 3).

We fully agree with the learned trial judge's interpretation. In reaching this conclusion, we are guided by the words of our distinguished colleague, the Honorable J. Sydney Hoffman:

*Gray* and *Dunham,*[3] make it clear that the primary interest of Pennsylvania jurisprudence in regard to informed consent is that of having the patient informed of all the material facts from which he can make an intelligent choice as to his course of treatment, regardless of whether he in fact chooses rationally.

*Sauro v. Shea,* 257 Pa.Super. 87, 94, 390 A.2d 259, 262–263 (1978).

Thus, in this instance, whether the information received by the appellant was sufficient for informed consent was a question of fact for the jury. The trial court properly rejected the appellant's requested point for charge.

■ The appellant also contends that the lower court erred in refusing to charge the jury that the appellant was entitled to a negative inference based on the appellee's failure to testify.

Generally, if a litigant fails to call a witness who presumably would support his allegation, the opposing party is entitled to have the jury instructed that it may infer that the witness, if called, would testify adversely to the party who failed to call him. *Haas v. Kasnot,* 371 Pa. 580, 92 A.2d 171 (1952); *Moseley v. Reading Co.,* 295 Pa.

3. *Dunham v. Wright,* 423 F.2d 940 (3d Cir.1970).

342, 145 A. 293 (1929); *Abrams v. Crown,* 178 Pa.Super. 407, 116 A.2d 331 (1955). But this rule is inapplicable if such witness is equally available to both sides of the litigation. *Haas v. Kasnot,* 377 Pa. 440, 105 A.2d 74 (1954); *See also Davidson v. Davidson,* 191 Pa.Super. 305, 156 A.2d 549 (1959). In other words, the inference is permitted only where the uncalled witness is peculiarly within the reach and knowledge of only one of the parties. *Cf.* 2 Wigmore, Evidence § 288 (3d ed. 1940). *Bentivoglio v. Ralston,* 447 Pa. 24, 29, 288 A.2d 745, 748 (1972); *See also: Commonwealth v. Newmiller,* 487 Pa. 410, 409 A.2d 834 (1979).

During trial the appellee appeared in the court room from time to time. The appellants were free to subpoena the appellee to testify, or to call him as on cross-examination as an adverse witness when he was in the court room, or to introduce all of his pre-trial deposition testimony. The appellants, though, did not subpoena the appellee, nor call him as a witness while he was present, and only offered portions of his deposition testimony at trial. The appellee was equally available to both parties and was subject to service by the appellants. Therefore, under the circumstances of this case, we agree with the trial court that a jury instruction on negative inference was inappropriate.