Karen PERKINS and James Perkins,
H/W, Appellants,

v.

Robert DESIPIO, D.D.S., Appellee.

Superior Court of Pennsylvania.

Argued March 23, 1999.

Filed Aug. 2, 1999.

Neil E. Jokelson, Philadelphia, for appellants.

George H. Knoell, III, Norristown, for appellee.

Before ORIE MELVIN, SCHILLER, and MONTEMURO *, JJ.

ORIE MELVIN, J.:

¶ 1 Appellants, Karen Perkins and James Perkins, appeal from the judgment entered on the verdict in favor of Appellee, Robert Desipio, D.D.S., in this dental malpractice action following the trial court's denial of their motion for post trial relief. The Appellants challenge the trial court's refusal to submit their informed consent cause of action to the jury. For the following reasons we reverse.

¶ 2 On Thursday, July 30, 1992 while vacationing in Ocean City, Maryland Mrs. Perkins developed a toothache in an upper front tooth. She contacted her mother who then arranged an appointment with Dr. Desipio for Monday, August 3, 1992. On August 3, 1992 Mrs. Perkins presented to Dr. Desipio's office whereupon he examined her teeth and took an x-ray of the affected area. Dr. Desipio determined that tooth # 10 was in need of an immediate root canal and scheduled her to return the following day. On August 4, 1992 Dr. Desipio performed the root canal procedure on the affected tooth, prescribed pain pills and instructed Mrs. Perkins to call if she experienced any problems. In the early morning of August 5, 1992, Mrs. Perkins was awakened due to severe pain in the region where the root canal was performed. She attempted to contact Dr. Desipio throughout the morning and afternoon hours without success.

* Retired Justice assigned to the Superior Court.

¶ 3 At approximately 7:30 p.m. that evening she presented herself to the emergency room of Thomas Jefferson University Hospital due to the continuing pain and accompanying swelling. She was prescribed antibiotics and painkillers and released. Dr. Desipio returned Mrs. Perkins' calls at approximately 10:30 p.m. and was apprised of her emergency room visit. Dr. Desipio instructed Mrs. Perkins that he would see her first thing the following morning. She followed up on August 6, 1992 with Dr. Desipio as instructed, and he attempted to drain the tooth without success. He prescribed additional antibiotics and instructed Mrs. Perkins to see an oral surgeon if her condition did not improve. The following day Mrs. Perkins consulted with her oral surgeon and chose to have the tooth extracted.

¶ 4 Mrs. Perkins and her husband filed suit against Dr. Desipio alleging claims of negligence and a lack of informed consent. She primarily alleged that Dr. Desipio was negligent by not prescribing antibiotics either immediately prior to or after the procedure. She further complained that he did not inform her of the risk of an infection developing following this procedure. At the time of trial in an effort to establish her lack of informed consent claim she attempted to offer the testimony of her expert Dr. Martin Phillips. The court conducted an *in camera* examination of Dr. Phillips for the purpose of determining the viability of the informed consent claim. After this examination, the court ruled that the root canal was not subject to informed consent and therefore precluded Dr. Phillips from testifying. The trial proceeded on the negligence claim, following which the jury returned a defense verdict. The Perkins filed a motion for post trial relief asserting error in the denial of their informed consent claim, which was subsequently denied. This appeal followed the entry of judgment on the defense verdict.

¶ 5 The sole issue presented for our determination is whether a dentist must obtain the informed consent of his patient prior to performing a root canal. Instantly, the trial court determined as a matter of law that the doctrine of informed consent was inapplicable. We disagree.

¶ 6 The trial court's ruling effectively directed a verdict in favor of Dr. Desipio on the informed consent claim. Accordingly, our scope of review is limited to determining whether the trial court abused its discretion or committed an error of law which controlled the outcome of the case. *Childers v. Power Line Equipment Rentals, Inc.*, 452 Pa.Super. 94, 681 A.2d 201 (1996), *appeal denied*, 547 Pa. 735, 690 A.2d 236 (1997). "In deciding whether to grant a motion for a directed verdict, the trial court must consider the facts in the light most favorable to the nonmoving party and must accept as true all evidence which supports that party's contention and reject all adverse testimony." *51 Park Properties v. Messina*, 720 A.2d 773, 775 (Pa.Super.1998) (citing *Brown v. Philadelphia Asbestos Corp.*, 433 Pa.Super. 131, 639 A.2d 1245, 1248 (1994)). Moreover, "a directed verdict may be granted only where the facts are clear and there is no room for doubt." *Id.* (citing *Forgang v. Universal Gym Co.*, 423 Pa.Super. 416, 621 A.2d 601 (1993)).

¶ 7 In *Southard v. Temple University Hospital*, 1999 PA Super 95, 731 A.2d 603 we recently reiterated this Commonwealth's doctrine of informed consent as follows:

Pennsylvania law requires a physician, in a non-emergency situation, to obtain a patient's informed consent prior to performing a surgical procedure if the patient is mentally and physically able to discuss his or her medical condition. *Doe v. Dyer–Goode*, [389 Pa.Super. 151] 566 A.2d 889, 891 (Pa.Super.1989). Pennsylvania's informed consent doctrine is based on a 'prudent patient' standard and courts, therefore, must examine informed consent issues from the perspective of the patient, not of the physician. *Sagala v. Tavares*, [367 Pa.Super. 573] 533 A.2d 165, 167 (Pa.Su-

per.1987). Thus, for a patient's consent to be informed, a physician must disclose to the patient the 'material facts, risks, complications and alternatives to surgery, which a reasonable man in the patient's position would have considered significant in deciding whether to have the operation.' *Gouse v. Cassel,* 532 Pa. 197, 202, 615 A.2d 331, 333 (1992). Generally, it is the finder of fact who determines whether information is material in an informed consent action. *Moure v. Raeuchle,* 529 Pa. 394, 405, 604 A.2d 1003, 1008 (1992).

*Id.* at 17, 729 A.2d 89.

¶ 8 In determining whether Pennsylvania's doctrine of informed consent is applicable in the context of a dentist performing a root canal, the trial court based its conclusion on its belief that a root canal was not surgery in that there was no cutting into or "removal of any gum tissue." N.T., Expert Colloquy About Informed Consent, 9/3/97 at 10.[1] It is true that informed consent has traditionally been applied only in the surgical or operative context. *See Sinclair by Sinclair v. Block,* 406 Pa.Super. 540, 594 A.2d 750, 756 n. 13 (1991), *affirmed,* 534 Pa. 563, 633 A.2d 1137 (1993) (noting that the doctrine has always been applied to cases "involving a surgical procedure in which the patient is anaesthetized, an incision is made, and pieces of tissue, bone, etc. are excised …"). However, we believe the trial court's conclusion is erroneous as it minimizes the invasive nature of a root canal.

¶ 9 We have not previously been called upon to specifically decide whether a root canal constitutes a surgical or operative procedure requiring informed consent. In the field of dentistry we have clearly determined that the extraction of teeth requires informed consent. *See e.g. Bulman v. Myers,* 321 Pa.Super. 261, 467 A.2d 1353 (1983) (involving informed consent

cause of action for extraction of impacted wisdom teeth) and *Sauro v. Shea,* 257 Pa.Super. 87, 390 A.2d 259 (1978) (doctrine applied where 23 teeth were extracted under general anesthesia). However, in both *Bulman* and *Sauro* there was no dispute concerning whether the procedures constituted surgery. Therefore, these decisions offer little assistance to our resolution of the instant question. The Appellants argue by way of analogy from the definition of surgical or operative procedures offered by our Supreme Court in *Morgan v. MacPhail,* 550 Pa. 202, 704 A.2d 617 (1997), wherein the court stated:

> Neither the Pennsylvania legislature nor courts have defined surgical or operative procedure; however, 'operate' is defined in *Taber's Cyclopedic Medical Dictionary* 1256 (16th ed.1989) as 'to perform an excision or incision, or to make a suture on the body or any of its organs to restore health.' 'Surgery' is defined in *Black's Law Dictionary* 1442 (6th ed.1990) as 'that branch of medical science which treats of mechanical or operative measures for healing diseases, deformities or injuries.' 'Operation' is defined as 'an act or succession of acts performed upon the body of a patient, for his relief or restoration to normal conditions, by the use of surgical instruments as distinguished from therapeutic treatment by the administration of drugs or other remedial measures.' *Black's Law Dictionary* 1092 (6th ed.1990).

*Id.* 704 A.2d at 619. Appellants argue that a root canal is an invasive procedure involving the use of surgical instruments and the 'incision or excision' upon the body of the patient 'to restore health' as contemplated by the Supreme Court's definition of "Surgery" or "Operation" in *Morgan, supra.* Appellants' brief at 12. We agree.

---

1. We note with disapproval the trial court's failure to file an opinion as required by Pa. R.A.P.1925(a). Ordinarily, a remand would be in order. *Gibbs v. Herman,* 714 A.2d 432 (Pa.Super.1998). However, in light of the trial judge's retirement and since the question raised is purely a matter of law, we will address this matter without the benefit of the trial court's reasoning and citation to authority to support its conclusion.

¶ 10 During cross-examination Dr. Desipio describes the root canal procedure he performs in the following fashion:

The way that root canal work is done is that you must go down the whole length of the tooth and clean it out so you put little files that we use and put them up there with little rubber stops on the files and have them stop at certain lengths and take an x-ray.... The files were color coded. And each one was a little bit larger then the one we put in before. So that my record of going in opening up the tooth, cleaning it out and putting a file up and taking an X-ray to get exactly where I wanted all of my instruments to stop. So on the next visit I would have an exact measurement of how far I would go rather then go to [sic] far up above what they call the apex or the end of the tooth.

N.T., 9/3/97, at 98.

\* \* \* \*

Really most people don't understand what root canal is. And I will explain it to them. I will explain it in their terms that there's a nerve that goes through the center of the tooth. For some reason, or other if that nerve dies, and it starts to hurt and breaks up, it gets infected. The nerve has to be removed and it has to be cleaned out flushed, and you have to seal it with something.

*Id.* at 108.

¶ 11 Moreover, during the colloquy of Appellants' expert, Dr. Phillips concurs that a root canal is an invasive procedure where files are used to reach below the gum line to the canal of the tooth for the purpose of excising the infected or dead nerve tissue. N.T., Expert Colloquy, 9/3/97, at 16–17. Dr. Phillips furthers distinguished a root canal from the filling of a cavity as follows:

Q: Why would you in this case with Karen Perkins get informed consent, and not in a decay, in a cavity situation?

A: Well, because here you are going into the soft tissue, the pulp of the tooth which is the nerve, and blood supply that is infected that is necrotic there. And there is a lot of infection that has already eaten away at the bone at the apex.

\* \* \* \*

A: In a normal filling the idea is to stay out of the nerve.

BY THE COURT:

Q. Well just so we are clear in this case what was done was the material in that canal was removed?

A: That's correct. Yes.

*Id.* at 18–20.

¶ 12 Certainly no one would argue that the excision of a malignant tumor or even a benign cyst that was causing a patient discomfort is not a surgical or operative procedure. We discern no difference between the removal of diseased nerve tissue in the root of a tooth and diseased cell growth in some other part of the body. The trial court places undue emphasis on the fact that the gum was not cut into in order to accomplish the desired result of alleviating the patient's pain. The dentist must gain access to the affected area by one means or another. The fact that a dentist would use the least invasive method of treatment available does not diminish the nature of that treatment. Regardless of whether the dentist goes through the gum or the top of the tooth, we clearly have an invasion into the body involving the use of a surgical instrument to make an excision in order to relieve discomfort or restore the patient's health. As such, we find the procedures here involved fall within the definition of surgical or operative procedures provided by our Supreme Court in *Morgan, supra.* Accordingly, the Appellants presented a viable informed consent claim, and the trial court erred in removing said claim from the jury's consideration.

¶ 13 Judgment reversed. Case remanded for a new trial on informed consent only. Jurisdiction relinquished.