# Meridien Energy, LLC v. Hockran Excavating

C.P. of Washington County, No. 2009-10043; 1203 WDA 2013

*Jason M. Yarbrough* and *James Richard Mall*, for plaintiff/appellant.

*William T. Jorden* and *Matthew Bailey Jorden*, for defendant/appellee.

O'DELL-SENECA, *J.*, November 5, 2013—The matter before this court was plaintiff Meridien Energy, LCC's (hereinafter "Meridien") post-trial motions and challenge to the May 17, 2013 jury verdict in favor of defendant Hockran Excavating (hereinafter "H&H") in the amount of $428,040, which plaintiff has appealed. The relevant facts are as follows:

Meridien is a contractor that constructs gas pipelines for utility companies. It was hired by Equitrans, LP, a division of Equitable Gas, to install a portion of pipeline along Route 19 in Peters Township, Washington County, Pennsylvania. Meridien hired H&H, an excavation contractor, to install a portion of the pipeline by a method known as horizontal

directional drilling ("HDD"), via a June 1, 2009, contract, which specified that the HDD location would be "along the existing pipeline right of way." (Plaintiff's trial exhibit 1). The contract also provided that acceptance of the gas line installation would be at the discretion of Equitrans, and that Meridien would make no compensation to H&H for any portion of the installation that was rejected by equitrans. *Id.* at ¶ 17.

In June 2009, H&H began work, and upon completing a pilot hole, Meridien tendered a progress payment to defendant for 40% of the completed project, being $285,360, per the contract. The balance of $428,040 was due to H&H upon successful completion of the project. Defendant's vice president and co-owner, Jason Hockran, testified that he interpreted plaintiff's progress payment as "confirmation to me that the pilot hole was where they wanted per the terms of the contract." (T.T. Vol. 3, 19:2-4).

H&H proceeded to complete the HDD and install the steel pipe into the hole. On July 16, 2009, defendant submitted an invoice to Meridien for the completed work, seeking the remaining $428,040. However, the invoice was not paid, as Equitrans had by then indicated to Meridien that "the pipe was off the right of way and perhaps under houses." (T.T. Vol. 1, 46:3-4). Mr. Hockran testified that his company installed the pipeline within the right of way and should have been accepted. Moreover, he blamed Meridien for Equitrans rejecting defendant's line:

> [T]hey gave us information to drill the original drill with, we utilized that information, we installed the pipe based on that information, but then after we had the pilot hole done and the pipe installed, they came back

and said that there is new information that we have to not accept this line.

(T.T. Vol. 3, 34:19-24). Even so, H&H began to devise alternative solutions, because, pursuant to the contract, it would not receive payment until Equitrans accepted the work. (T.T. Vol. 3, 36:2-22).

On August 5, 2009, H&H proposed an amendment to the original contract which permitted it to complete the project by way of an intersect drill "for the original contract sum," but H&H would "not accept any financial responsibility for any costs incurred by" Meridien or Equitrans. Plaintiff rejected this proposed amendment. In an effort to reach an agreement to complete the project to Equitrans' satisfaction, representatives of both parties — Bob Joyce and J.J. Connor for plaintiff and Thomas Hockran for defendant — met at the Italian Fisherman restaurant in Bemus Point, New York on August 9, 2009.

Plaintiff's agents indicated it "would incur costs and back charges" if it permitted defendant to attempt the intersect drill. (T.T. Vol. 2, 41:9-13). Mr. Hockran asked Mr. Connor for a cost estimate, and Mr. Connor testified that he replied, "It's going to be $200,000, $250,000 minimum. It's going to be a big number." (T.T. Vol. 2, 96:14-15). There is significant disagreement over who would be responsible for any back charges. Mr. Joyce and Mr. Connor testified that Mr. Hockran agreed that H&H would cover plaintiff's back charges if permitted to attempt the intersect drill. (T.T. Vol. 2, 45:10-13; T.T. Vol. 2, 95:3-7). Conversely, Mr. Hockran testified that he never agreed for defendant to pay Meridien's costs. Instead he insisted that each party pay its own additional costs related to the

intersect drill. (T.T. Vol. 3, 154:1-8). A new or amended agreement was never executed, but the intersect drill was completed under the terms of the June 9, 2009, contract.

Soon after the meeting at the Italian Fisherman, H&H began work on the intersect drill, and completed the project, which Equitrans accepted. On September 4, 2009, Meridien billed defendant for $711,208.76 in back charges, but claimed that it only sought $283,168, as it had credited H&H with $428,040 for completing the project. Defendant disputed Meridien's back charges, and, on October 1, 2009, defendant's attorney sent a letter demanding the balance of $428,040, as well as $817,125 for costs related to the intersect drill. On November 9, 2009, Meridien sued H&H.

## PLAINTIFF'S MATTERS COMPLAINED OF ON APPEAL

### Plaintiff's Motion for Directed Verdict

Plaintiff complains that this court erred in refusing to grant plaintiff's motion for directed verdict for three reasons. "[A] directed verdict may be granted only where the facts are clear and there is no room for doubt." *Perkins v. Desipio*, 736 A.2d 608, 609 (Pa. Super. 1999) (internal citations omitted). "In deciding whether to grant a motion for a directed verdict, the trial court must consider the facts in the light most favorable to the nonmoving party and must accept as true all evidence which supports that party's contention and reject all adverse testimony." *Id.* (internal citations omitted). A directed verdict was not merited in this case for the reasons contained herein.

Meridien first contends this court should have issued a

directed verdict because H&H failed to introduce evidence that the contract was modified to relieve defendant "for all additional costs and financial consequences in failing to provide a successfully [sic] pipeline installation." Concise Statement of Matters Complained of on Appeal Pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), ¶ 1(a). It is undisputed that H&H ultimately completed the project, and thus this court must assume plaintiff is arguing that the original contract required defendant to cover Meridien's costs for the initial, rejected pipeline. Plaintiff's argument fails, as the contract only holds defendant liable for costs arising from "non-completion of the contracted work." (Plaintiff's trial exhibit 1, ¶ 13.1). Further, it was reasonable for the jury to interpret this clause as not applying to the rejected work which was ultimately completed and accepted by Equitrans.

Plaintiff's second directed verdict argument is rooted in Equitrans' discretion to accept or reject any work performed by defendant. Plaintiff posits that, because Equitrans' rejection of defendant's initial pipeline was permissible under the contract, the jury's verdict was contrary to law. Plaintiff's position is incorrect, as Equitrans' discretion to reject the HDD is immaterial to the jury's finding that, upon defendant's successful completion of the project, plaintiff was not entitled to back charges.

Finally, plaintiff claims it did not breach the contract, because it credited H&H with the outstanding balance of $428,040 in reducing defendant's back charges by that amount. Again, plaintiff's claim fails. The jury determined that plaintiff was not entitled to back charges, and thus plaintiff's imposition of back charges — with or without credit for the outstanding balance — constituted a breach.

Defendant's Testimony Regarding Its HDD Installation

Plaintiff next complains that the court erred in permitting defendant's representatives to testify that its HDD installation, which was ultimately rejected, was within the prescribed right of way, and not underneath residential structures. Plaintiff argued that such testimony was irrelevant, because, absent a showing of bad faith, Equitrans was within its discretion to reject defendant's work irrespective of it being within the right of way. (T.T. Vol. 3, 20:18-25). "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa.R.E. 401.

The testimony in question was ruled relevant, as it is critical to defendant's theory that it behaved at all times in conformity with the contract. It is undisputed that Equitrans had discretion to reject defendant's work, yet H&H contended that rejection did not necessarily entail a breach of its contract with Meridien. The contract required defendant to drill "along the existing pipeline right of way," and plaintiff's case-in-chief featured testimony that defendant breached this requirement. It is disingenuous, then, to claim defendant's testimony in defense of a specifically-alleged breach is irrelevant. Moreover, the testimony is pertinent to the critical issue of back charges: defendant's theory of the case is that any additional expense incurred by Meridien was, in fact, the fault of plaintiff, and that nothing in the course of defendant's performance would warrant back charges under the contract.

### The Jury Misapplied the Court's Charge on the Law

Plaintiff further complains that, because of a question the jury asked the court during deliberations, the jury ignored or misapplied the court's charge. "The law... is well established that courts should not overturn jury verdicts absent exigent circumstances such as a case of manifest and extreme abuse of the jury's function. Moreover a court will not inquire into the purely internal workings of the jury's decisional processes on the mere suspicion of confusion." *Pearsall v. Emhart Industries, Inc.*, 599 F.Supp. 207, 211 (E.D. Pa. 1984) (internal citations omitted). Accordingly, the jury's question does not equate to ignoring or misapplying the court's charge, and the jury's verdict should not be overturned.

### Plaintiff's Post-Trial Motions

Meridien complains this court erred by failing to consider and grant plaintiff's motion for post-trial relief on the grounds that the verdict was against the weight of the evidence and contrary to the law. This court did not err in denying plaintiff's motion for post-trial relief, as the jury's verdict is supported by the testimony and evidence. Defendant provided testimony that plaintiff breached the contract, as well as testimony challenging all grounds on which plaintiff alleged defendant breached the contract. "[A]ll matters of credibility and evidentiary weight are in the province of the fact-finder," *Appeal of Mellon Bank, N.A.*, 467 A.2d 1201, 1202-03 (Pa. Cmwlth 1983), and, the fact-finder, being the jury, made those credibility determinations.

Accordingly, the jury's verdict of May 17, 2013, should be upheld.