J-A08035-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SERGEI KOVALEV | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| BORIS RUBINSTEIN AND YES | : | No. 850 EDA 2023 |
| DENTAL, PC, GRACE WOO, AVESIS, | : | |
| INC. AND CHRIS SWANKER, HEALTH | : | |
| PARTNERS PLANS, INC. AND | : | |
| WILLIAM S. GEORGE, | : | |

Appeal from the Order Entered September 16, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 180201532

BEFORE: BOWES, J., OLSON, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED JULY 2, 2024**

Sergei Kovalev appeals from the order granting the summary judgment motion filed by Boris Rubinstein and Yes Dental. He maintains the court erred when entering various orders dismissing claims and defendants from the case. We affirm.

In February 2019, Kovalev initiated this action against Rubinstein, Yes Dental, PC, Grace Woo, Avesis Inc., Chris Swanker, Health Partners Plans, Inc., and William George. Kovalev had had dental appointments with Woo and Rubinstein at Yes Dental.

Rubinstein owns Yes Dental, and both he and Woo are dentists who work at the office. Kovalev filed an amended complaint claiming that Woo, who allegedly was not an approved provider under Medicaid, provided dental care.

Amended Cmplt., filed June 14, 2019, at ¶ 43. Kovalev claimed Woo made fraudulent misrepresentations that she was approved and he suffered damages as a result. *Id.* at ¶¶ 48-49.

In the amended complaint, Kovalev alleged Rubinstein was involved in acts of battery, discrimination, patient profiling, fraud, blacklisting, and refusal to provide requested dental services. *Id.* at ¶ 65. He maintained Rubinstein said he did not want to correct work of another dentist, falsely claimed there were no problems to be fixed, and then used " a sharp dental hook-pick with needle-sharp point and started 'probing' by sticking needle-sharp [*sic*] instrument" into Kovalev's gums, allegedly puncturing and lacerating his gums. *Id.* at ¶¶ 70-71, 83, 86. Kovalev also maintained Rubinstein submitted false paperwork to the insurance company saying he did work that Woo performed. *Id.* at ¶ 96.

Kovalev alleged he submitted a claim to Health Partners Plan, Inc. ("HPP"). *Id.* at ¶ 100. HPP is a health maintenance organization that provides health care benefits to Medicaid members. HPP's CEO is William George. Avesis is an administrator of dental insurance services, and Chris Swanker is its CEO. Kovalev maintained that HPP and Avesis had a duty to select the best and honest dental providers and they failed to deliver reasonable dental care. *Id.* at ¶¶ 148-149. He claimed they promoted injuries to patients, committed insurance fraud and other fraudulent activities, and intentionally endangered the health and well-being of plan members.

- 2 -

Kovalev asserted the following causes of action: battery against Rubinstein and Woo (counts 1 and 2); breach of implied contract for health and dental care against all defendants (count 3); negligence against all defendants (count 4); negligence *per se* against all defendants (count 5); breach of fiduciary duties against all defendants (count 6); fraud against all defendants (count 7); fraudulent misrepresentation against Woo, Rubinstein, and Yes Dental (count 8); intentional infliction of emotional distress ("IIED") against all defendants (count 9); negligent infliction of emotional distress ("NEID") against all defendants (count 10); invasion of privacy against Avesis, Swanker, HPP, and George (count 11); and common law and statutory bad faith against Avesis, Swanker, HPP, and George (count 12).

All defendants filed preliminary objections; Woo filed a motion to strike for lack of a certificate of merit. The court granted in part and denied in part the motion to strike and ordered that Kovalev file appropriate certificates of merit within 20 days of the docketing of the order. The court further sustained in part and overruled in part the preliminary objections. It dismissed from the case HPP, George, Avesis, and Swanker; and struck counts 11 and 12 (invasion of privacy and bad faith), count 3 (breach of contract), count 5 (negligence *per se*), count 6 (breach of fiduciary duty), count 7 (fraud), and count 8 (fraudulent misrepresentation). Order, filed Aug. 22, 2018. It overruled all other preliminary objections. In February 2019, the court struck the negligence claims for failure to file a certificate of merit. Order, filed Feb. 28, 2019.

The remaining defendants—Rubinstein, Yes Dental and Woo—filed motions for summary judgment. The court denied Woo's motion but granted Rubinstein's and Yes Dental's motion. Kovalev settled with Woo and discontinued the action against her. Docket, Case. No. 180201532, at Mar. 21, 2023; Trial Worksheet, filed Mar. 21, 2023 (noting court had been advised case settled, the case would be marked on the docket and removed from the applicable list and inventory of pending cases).

In March 2023, Kovalev filed three separate notices of appeal—one from the order sustaining the defendants' preliminary objections, one from the order striking the negligence claims, and the third from the order granting Rubinstein's and Yes Dental's summary judgment motion. This Court dismissed two of the appeals as duplicative. In his 1925(b) statement, Kovalev raised issues related only to the grant of Rubinstein's and Yes Dental's motion for summary judgment.

Kovalev raises the following issues:

> 1. Whether the lower court erred and/or abused its discretion by granting not verified motion for summary judgment in favor of Defendants Boris Rubinstein, DMD and Yes Dental, P.C.?
>
> 2. Whether the lower court erred and/or abused its discretion by dismissing Health Partners Plans, Inc., William S. George, Avesis Inc., and Chris Swanker based on Defendants' not verified preliminary objections?
>
> 3. Whether the lower court erred and/or abused its discretion by striking from the Amended Complaint Counts III (breach of contract for health care), Count V (negligence per se), Count VI (breach of fiduciary duty), Count VII (fraud), Count VIII (fraudulent misrepresentation), Count XI

(invasion of privacy - breach of privacy and confidentiality), and Count XII (common law bad faith and bad faith under 42 Pa.C.S.A. § 8371) based on Defendants' not verified preliminary objections?

4. Whether the lower court erred and/or abused its discretion by striking all ordinary negligence claims from the Amended Complaint?

5. Whether the lower court erred and/or abused its discretion by including in the August 1, 2019 Order denying Plaintiff's motion for reconsideration of the March 5, 2019 Order (that struck ordinary negligence claims) a statement that "Count X of the Plaintiffs Amended Complaint (Negligent Infliction of Emotional Distress) remains DISMISSED," when such statement was not corresponding with any record and Count X was never previously dismissed?

6. Whether the lower court erred and/or abused its discretion by making favorable decisions for Defendants that were not verifying any of their pleadings and motions for summary judgments?

Kovalev's Br. at 7-8.

Kovalev has waived most of his issues. Pursuant to Rule 1925(b), a judge may enter an order directing an appellant to file a concise statement of the errors complained of on appeal and the appellant must then file and serve on the trial judge such a statement:

> **(b) Direction to File, Statement of Errors Complained of on Appeal; Instructions to the Appellant and the Trial Court.** If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ("Statement").
>
> (1) *Filing and Service.* The appellant shall file of record the Statement and concurrently shall serve the judge. . . .

- 5 -

Pa.R.A.P. 1925(b)(1). Any issue not included in the 1925(b) statement will be deemed waived for appellate purposes: "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii).

Here, the trial court ordered Kovalev to file a concise statement of issues raised on appeal and included in the order a directive that "[a]ny issue not properly included in the Concise Statement timely filed and served pursuant to the Rules of Appellate Procedure shall be deemed waived." Order, filed May 30, 2023. Kovalev filed a concise statement in which he raised only issues related to the order granting Rubinstein and Yes Dental's motion for summary judgment. He has therefore waived any other claim raised on appeal.

Kovalev points out that the judge that issued the Rule 1925 order was the judge that issued the order granting summary judgment. He argues that the judges that had issued the prior orders that he challenged had not issued Rule 1925 orders, and claims he was not required to raise issues related to those orders unless ordered to do so by the judges who issued the prior orders.

"[I]nterlocutory orders dismissing various parties piecemeal from a lawsuit may not be appealed until the case is concluded as to the final remaining party and the case is therefore resolved as to all parties and all claims." ***Burkey v. CCX, Inc.***, 106 A.3d 736, 738 (Pa.Super. 2015); ***see also*** Pa.R.A.P. 341(a) (providing appeal may be taken only from a final order, that is, an order that disposes of all claims and all parties). Further, "a case

- 6 -

may be resolved against the final defendant by other than an order of court," such as where a case against a sole remaining defendant is settled and the court enters a docket entry that the claim was settled. **Burkey**, 106 A.3d at 739. That docket entry will render the prior judgments final and appealable. **Id.**

Here, the order giving rise to the appeal was the March 2023 docket entry marking the case settled between Kovalev and Woo, as at that point no issues or parties remained. **See id.** Therefore, Kovalev had 30 days from the date of that entry to file a timely notice of appeal.

Kovalev filed three separate notices of appeal, all dated March 28, 2023—one from the order sustaining the defendants preliminary objections, one from the order striking the negligence claims, and one from the order granting Rubinstein's and Yes Dental's summary judgment motion. However, one notice of appeal filed after entry of the settlement would preserve appellate challenges to all prior orders entered in the action. The multiple notices filed in this case were duplicative and this Court quashed two of the appeals.

Rule 1925(a) provides that the judge who issued the order giving rise to the notice of appeal, that is, the final, appealable order, shall file a 1925(a) opinion. It further provides that, if the appeal involves a ruling by a judge other than the judge entering the order giving rise to the appeal, a request can be made to the judge who made the prior ruling for the issuance of an opinion on the issue:

**(a) Opinion in support of order.**

*(1) General rule.* Except as otherwise prescribed by this rule, upon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall within the period set forth in Pa.R.A.P. 1931(a)(1) file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found.

If the case appealed involves a ruling issued by a judge who was not the judge entering the order giving rise to the notice of appeal, *the judge entering the order giving rise to the notice of appeal may request that the judge who made the earlier ruling provide an opinion to be filed in accordance with the standards above to explain the reasons for that ruling.*

Pa.R.A.P. 1925(a) (emphasis added).

Accordingly, when the trial court issued its order requiring Kovalev to file a Rule 1925(b) statement, and stating that "[a]ny issue not properly included in the Concise Statement timely filed and served pursuant to the Pennsylvania Rules of Appellate Procedure shall be deemed waived," Kovalev was required to raise all alleged errors challenging any order entered since the commencement of the case. 1925(b) Order, dated May 30, 2023; Pa.R.A.P. 1925(a). The trial court judge would then determine whether an opinion by a different judge was required to address any issue raised. The failure to include issues related to the orders sustaining preliminary objections and dismissing the negligence claims constitutes waiver of those issues on appeal. Pa.R.A.P. 1925(b)(4)(vii).

Accordingly, we will now address the two preserved issues – whether the court erred when it granted Rubinstein's and Yes Dental's motion for summary judgment and whether the court erred in not requiring the summary judgment motion to be verified.

Kovalev first maintains the court erred or abused its discretion by granting Rubinstein's and Yes Dental's motion for summary judgment. He claims the lawsuit was based on assault and battery, not negligence, and that it was not about "medical battery," but "common law tort battery." Kovalev's Br. at 28. He claims that non-consensual touching is all that is required for a battery. Kovalev maintains that Rubinstein was prohibited from not only sticking a sharp instrument in Kovalev's mouth but also from doing anything not authorized in writing. He maintains the sticking and puncturing was intentional. He claims Rubinstein collected payment for his illegal activities and falsely categorized his failure to provide services as emergency treatment. Kovalev further argues that his request for punitive damages was appropriate because assault and battery are claims for which a plaintiff can recover punitive damages, and he argues the acts were done with reckless indifference. He further argues that his certificate of merit stating expert testimony is unnecessary was sufficient and again states he was asserting a claim based on intentional conduct. Kovalev argues that a certificate of merit was not required against Rubinstein and Yes Dental because there were no professional malpractice claims.

"[S]ummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." ***Summers v. Certainteed Corp.***, 997 A.2d 1152, 1159 (Pa. 2010). (quoting ***Atcovitz v. Gulph Mills Tennis Club, Inc.***, 812 A.2d 1218, 1221 (Pa. 2002)); ***see*** Pa. R.C.P. No. 1035.2(1). "[T]he trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party." ***Summers***, 997 A.2d at 1159 (quoting ***Toy v. Metropolitan Life Ins. Co.***, 928 A.2d 186, 195 (Pa. 2007)). "[T]he trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party," and may grant summary judgment only "where the right to such judgment is clear and free from all doubt." ***Id.*** (citation omitted).

This Court may reverse an order granting summary judgment "if there has been an error of law or an abuse of discretion." ***Id.*** (quoting ***Weaver v. Lancaster Newspapers, Inc.***, 926 A.2d 899, 902 (Pa. 2007)). Whether there are no genuine issues of material fact is a question of law, which we review *de novo*. ***Id.*** (citation omitted).

At the time Rubinstein and Yes Dental filed the motion for summary judgment, the claims remaining against them where battery and IIED against Rubinstein, and IIED against Yes Dental. On appeal, Kovalev does not claim the court erred in granting summary judgment on the IIED claims. Therefore, we will address only whether the court erred in granting summary judgment as to the battery claim against Rubinstein.

- 10 -

In the amended complaint, Kovalev made the following allegations related to an alleged "battery":

71. On February 25, 2016, after [Kovalev] complained about high areas on previously installed dental filling, . . . Rubinstein looked into [Kovalev's] mouth for a couple of seconds and told that he cannot see anything wrong.

72. [Kovalev] needed to remind [Rubinstein] that he would not be able to see anything by only looking into [Kovalev's] mouth for 1-2 seconds, especially if [Rubinstein] is not doing any proper examination.

73. [Rubinstein] took extremely thick dental articulating paper that can be hardly pressed between teeth and placed it (without drying examined surfaces) on [Kovalev's] teeth, after that, he said again that he cannot see any high areas.

74. Dental articulating paper is a sort of carbon paper offered in different colors and used to identify high occlusal (contact) areas (with color markings) on dental fillings in the process of performing occlusion of teeth with articulating paper placed in between.

75. After identifying higher areas on the installed dental fillings, dentist must reduce such high areas by slowly grinding it down with rotating dental instrument attachment. This process is time consuming and, in most cases, is repeated multiple times until patient is satisfied with his occlusion (how teeth are contacted to each other).

76. To achieve correct results, surface of teeth must be completely dry, especially when articulating paper is not designed to leave marks of the wet teeth surfaces.

77. When dental articulating paper is failing to show high areas on installed dental fillings, dentist still has several other methods to identify discomfort areas, for example, by using dental wax impressions, etc.

78. Adjustment for installed dental fillings is a time consuming process, and many unscrupulous dentists are failing to perform correct work by falsely claiming that there is nothing wrong, and such way, dentists are defrauding

patients and denying dental care with false claims that they cannot see any high areas. This was exactly the case with . . . . Rubinstein, because . . . Rubinstein was billing Medicaid insurance in any case, with or even without providing any dental care.

79. [Kovalev] needed to respond to . . . Rubinstein's statements that he [. . . Rubinstein] cannot see any high areas because his very thick articulating paper hardly can leave any markings in deeper areas, especially because [Rubinstein] was not properly drying surface of examined teeth.

80. Despite [Kovalev] complaints about high areas on some previously installed dental fillings (installed previously in illegal manner by Avesis' dentist Irina Stepansky), . . . Rubinstein was misleadingly telling that he cannot see any high areas.

81. To prove that . . . Rubinstein was providing incorrect [false] information, [Kovalev] used his own drying material and placed his own articulating paper on not adjusted dental fillings and after making occlusal movements, asked . . . Rubinstein to see the results.

82. . . . Rubinstein was again telling falsely and in malicious manner that he cannot see any high areas. However, when [Kovalev] took his own mirror and looked into his mouth, he was able to see markings left on some high areas of not adjusted dental fillings; and [Kovalev] needed to tell Rubinstein that it is extremely unusual that he [Kovalev] can see marked high areas, but . . . Rubinstein is refusing to acknowledge it.

83. After that, and with pretension to locate the high areas on dental fillings, . . . Rubinstein took a sharp dental hook-pick with needle-sharp point and started "probing" by sticking needle-sharp instrument into [Kovalev's] gums[] areas around teeth that had not adjusted dental fillings.

84. The gums are a part of the soft tissue lining of the mouth. They surround the teeth and provide a seal around them. Dental hook-pick with needle-sharp point is not used for any soft tissue (gums) oral examinations, but only for tooth or tooth cavity (hard bone structures) examinations.

85. Oral gums' examinations are never performed with sharp dental hook-pick that has needle-sharp point, but can be performed with dental hook-pick that has rounded (dull) point (specifically designed for soft tissue examinations), to prevent any oral gums lacerations.

86. While "probing" gums' areas by sticking needle-sharp instrument into the gums' areas around teeth, and by using incorrect instrument, . . . Rubinstein intentionally and maliciously punctured and lacerated surfaces of [Kovalev's] oral gums and inflicted bleeding from damaged/punctured by . . . Rubinstein areas.

87. It is extremely unusual for any dentist to use very sharp instrument for intentional perforation of patient's gums and for placing such sharp instrument under the patient's gums.

88. It is also extremely unusual for any dentist to cause patient's bleeding during simple examination of healthy gums; unless dentist doing it intentionally and/or dentist totally unfit to practice dental profession.

89. Moreover, [Kovalev] never gave any authorization to . . . Rubinstein to examine and to perforate his gums [including bleeding], but only requested to adjust the high areas on already existing dental fillings (hard elevated areas) that had no any [sic] connection to dental gums. Injured soft tissue areas were distant from elevated areas of dental fillings.

90. [Kovalev] needed to state to . . . Rubinstein that he came to Rubinstein's office not to be battered and not to be subjected to bodily injuries, and to bleeding, but to receive medically needed adjustment of high areas on improperly installed fillings that caused severe discomfort to [Kovalev].

91. [Rubinstein] answered to [Kovalev] (to the best recollection): "If you need adjustments, take a rasp and grind your teeth until you would not feel anything".

92. At that point, [Kovalev] stated that he has no desire to have any further communications, or any further encounters with . . . Rubinstein and with Yes Dental, and left the office of Yes Dental P.C.

Amended Cmplt. at ¶¶ 71-92.

Kovalev's allegations sound in medical negligence, not battery. Informed consent sounds in battery and "requires a physician, in a non-emergency situation, to obtain a patient's informed consent prior to performing a surgical procedure if the patient is mentally and physically able to discuss his or her medical condition." *Perkins v. Desipio*, 736 A.2d 608, 609 (Pa.Super. 1999) (citation omitted). Further, "a claim involving a surgical procedure performed without any consent at all by the patient . . . sounds in battery." *Montgomery v. Bazaz-Sehgal*, 798 A.2d 742, 749 (Pa. 2002).

In *Perkins*, this Court concluded that a root canal constituted a surgery for which informed consent must be obtained. The Court pointed to the definition of surgical or operative procedures provided by the Pennsylvania Supreme Court in *Morgan v. MacPhail*, 704 A.2d 617 (Pa. 1997):

> Neither the Pennsylvania legislature nor courts have defined surgical or operative procedure; however, 'operate' is defined in *Taber's Cyclopedic Medical Dictionary* 1256 (16th ed.1989) as 'to perform an excision or incision, or to make a suture on the body or any of its organs to restore health.' 'Surgery' is defined in *Black's Law Dictionary* 1442 (6th ed.1990) as 'that branch of medical science which treats of mechanical or operative measures for healing diseases, deformities or injuries.' 'Operation' is defined as 'an act or succession of acts performed upon the body of a patient, for his relief or restoration to normal conditions, by the use of surgical instruments as distinguished from therapeutic treatment by the administration of drugs or other remedial measures.' *Black's Law Dictionary* 1092 (6th ed.1990).

*Perkins*, 736 A.2d at 610 (quoting *Morgan*, 704 A.2d at 619). The *Perkins* court concluded a root canal was "an invasion into the body involving the use of a surgical instrument to make an excision in order to relieve discomfort or

restore the patient's health," and therefore required informed consent. *Id.* at 611.

Here, the use of instruments to explore Kovalev's mouth does not constitute a "surgical procedure." Kovalev does not maintain Rubinstein invaded his body to perform an excision or incision of anything to relieve discomfort or restore health. Accordingly, the law involving battery and informed consent does not apply.

Medical malpractice is defined as the "unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services." *Ditch v. Waynesboro Hosp.*, 917 A.2d 317, 321-322 (Pa.Super. 2007) (quoting *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1154 (Pa. 2003)). A medical malpractice claim is distinguished by two characteristics. "First, medical malpractice can occur only within the course of a professional relationship. Second, claims of medical malpractice necessarily raise questions involving medical judgment." *Id.* at 322 (quoting *Grossman v. Barke*, 868 A.2d 561, 570 (Pa.Super. 2005)). Accordingly, "where a complaint is predicated upon facts constituting medical treatment, that is, when it involves diagnosis, care and treatment by licensed professionals, the action must be characterized as a professional negligence action." *Id.* (citation omitted).

To assert a medical negligence claim, a plaintiff must file a certificate of merit:

(a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either

(1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa.R.C.P. 1042.3(a).

Expert testimony is not necessary if a "narrow exception" applies: no such testimony is required "in instances of obvious negligence, *i.e.*, circumstances in which the medical and factual issues presented are such that a lay juror could recognize negligence just as well as any expert." ***Fessenden v. Robert Packer Hosp.***, 97 A.3d 1225, 1230 (Pa.Super. 2014) (citation omitted). In those cases, the doctrine of *res ipsa loquitur* "allows a fact-finder to infer from the circumstances surrounding the injury that the harm suffered was caused by the negligence of the defendant." ***Id.*** (citation omitted).

Kovalev's allegations assert a medical malpractice claim, as they involved the diagnosis, care, and treatment by a licensed professional.

- 16 -

Kovalev's certificate of merit states that he does not need expert testimony to establish his claim. However, in this case, the claims do not qualify for the narrow exception where expert testimony is not needed, as a lay juror could not recognize the negligence just as well as an expert.

Accordingly, the trial court did not err in granting summary judgment to Rubinstein and Yes Dental, as there were no genuine issues of material fact. Kovalev did not raise a battery claim. Rather, he raised a medical malpractice claim that required expert testimony.

Kovalev then argues the court erred by making favorable decisions for defendants when the defendants' pleadings and motions were not verified. He claims the motion for summary judgment contained only an attorney verification.

Pursuant to Pennsylvania Rule of Civil Procedure 206.3, "A petition or an answer containing an allegation of fact which does not appear of record shall be verified." Pa.R.C.P. 206.3 The Rules define "verified" as follows: "*Verified*—when used in reference to a written statement of fact by the signer, means supported by oath or affirmation or made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities." Pa.R.C.P. 76.

Here, the summary judgment motion was not a petition or answer that contained a fact not appearing of record. It therefore did not need to be verified. This claim lacks merit.

Judgment affirmed.

Judge Bowes joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/2/2024