J-A28033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CHARLES F. COHAN AND LISA K. COHAN, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| UNITED SERVICES AUTOMOBILE ASSOCIATION, | |
| Appellee | No. 683 EDA 2016 |

Appeal from the Order Entered February 4, 2016
in the Court of Common Pleas of Monroe County
Civil Division at No.: 1066 Civil 2013

BEFORE:  PANELLA, J., SHOGAN, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED JANUARY 05, 2017**

Appellants, Dr. Charles F. and Lisa K. Cohan, appeal from the trial court's order granting the preliminary objections filed by Appellee, United Services Automobile Association, and dismissing their second amended complaint with prejudice.  We affirm.

We take the following relevant facts and procedural history from the trial court's February 4, 2016, opinion and our independent review of the certified record.  In 1984, while he was a captain in the United States Army, Charles Cohan purchased an automobile insurance policy from Appellee with a $100,000.00 per person liability limit.  He maintained the policy with the

_____

[*] Retired Senior Judge assigned to the Superior Court.

same coverage limits through 2011. He married Lisa Cohan in 1995 and added her to the auto policy as an "operator." Appellee never advised Appellants that they should increase their automobile liability coverage.

In 2002, Appellants purchased land and built a new home. On December 6, 2002, they purchased homeowner's insurance from Appellee with liability coverage in the amount of $1,000,000.00 per occurrence.

On March 5, 2011, Lisa Cohan, while driving a Cohan vehicle, collided with another vehicle, causing the driver fatal injuries. The administrator of the estate of the decedent brought a wrongful death/survival action and Appellee defended the action on behalf of Ms. Cohan. The matter settled for $300,000.00, but Appellee paid only the policy limits of $100,000.00. Appellants paid the remainder of the settlement amount.

On April 1, 2015, Appellants filed a complaint against Appellee, claiming, *inter alia*, that it should have advised Dr. Cohan to increase the auto liability policy limits over the years that he was a customer, and requesting judgment in the amount of $200,000.00. Appellee filed preliminary objections thereto. On September 28, 2015, Appellants filed a second amended complaint. Appellee filed preliminary objections, which the trial court granted by order and opinion entered February 4, 2016, and it dismissed the complaint with prejudice. This timely appeal followed.[1]

---

[1] Pursuant to the trial court's order, Appellants filed a timely concise statement of errors complained of on appeal on March 9, 2016. **_See_**
*(Footnote Continued Next Page)*

Appellants raise the following issues for our review:

1. Did the trial court err in holding that despite their twenty-seven year, multi-policy insurer-insured relationship and [Appellee's] targeted affinity group based marketing, [Appellee] had no duty to coordinate [Appellants'] liability [c]overage across their policies or to reform the liability limits of their auto policy?

2. Did the trial court err in granting [Appellee's] preliminary objection demurrer to [Appellants'] [Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1—201-9.3] count by holding that [Appellants] must plead that they were "lied to" and that [Appellee's] targeting affinity group based advertising program was "puffery"?

3. Did the trial court err in declining to re-examine **D'Ambrosio** [**v. Pennsylvania Nat. Mut. Cas. Ins. Co.**, 431 A.2d 966 (Pa. 1981)] and hold that the [Unfair Insurance Practices Act, 40 P.S. §§ 1171.1—1171.15] provides insurance consumers a private right of action[?]

(Appellants' Brief, at 11) (unnecessary capitalization omitted).

In reviewing an order granting preliminary objections, our standard of review is as follows:

> Preliminary objections in the nature of a demurrer should be granted where the contested pleading is legally insufficient. Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer. All material facts set forth in the pleading and all inferences

*(Footnote Continued)* ————————————

Pa.R.A.P. 1925(b). The court filed a Rule 1925(a) statement on March 10, 2016, in which it relied on the opinion it entered on February 4, 2016. **See** Pa.R.A.P. 1925(a).

> reasonably deducible therefrom must be admitted as true.
>
> In reviewing a trial court's grant of preliminary objections, the standard of review is *de novo* and the scope of review is plenary. Moreover, we review the trial court's decision for an abuse of discretion or an error of law.

*Kilmer v. Sposito*, 146 A.3d 1275, 1278 (Pa. Super. 2016) (citations and quotation marks omitted).

In their first issue, Appellants argue the trial court erred by dismissing the negligence counts where Appellee failed to "coordinate and equalize" the limit of their automobile insurance policy with the later-selected liability limit of their homeowner's insurance policy. (Appellants' Brief, at 21; *see id.* at 13-21). Specifically, "[Appellants'] complaint is that for decades [Appellee] issued their auto insurance policy with a $100,000.00 liability limit and continued the $100,000 liability limit even after writing their homeowner's policy with a $1,000,000.00 policy limit." (*Id.* at 18). Appellants take issue with the fact that at the time they purchased the homeowner's policy, "no one from [Appellee] thought to mention to [Appellants] that after 18 years at $100,000.00, it might be time to increase their auto liability limit." (*Id.* at 4). This issue does not merit relief.

We begin by noting, "Pennsylvania courts have often stressed that the insured has both the capacity and the duty to inquire about the scope of insurance coverage, rather than rely on hand holding and substituted judgment." *Wisniski v. Brown & Brown Ins. Co. of PA*, 906 A.2d 571, 579 n.6 (Pa. Super. 2006), *appeal denied*, 920 A.2d 834 (Pa. 2007)

- 4 -

(citations and quotation marks omitted). "[T]his Court [has] rejected arguments . . . that an insurer has a duty to provide more comprehensive notice and explanation of the benefits provided in the insured's policy." ***Treski v. Kemper Nat. Ins. Companies***, 674 A.2d 1106, 1114 (Pa. Super. 1996). The ***Treski*** Court stated that there is:

> no justification in the law to impose the additional burden on insurers that they anticipate and then counsel their insured on the hypothetical, collateral consequences of the coverage chosen by the insured. The basic contractual nature of insurance coverage set forth in [our case law] requires fair dealing and good faith on the part of the insurer, not hand holding and substituted judgment. While we acknowledge insurance is an area in which the contracting parties stand in somewhat special relationship to each other, the relationship is not so unique as to compel this Court to require an insurer to explain every permutation possible from an insured's choice of coverage. Each insured has the right and obligation to question his insurer at the time the insurance contract is entered into as to the type of coverage desired and the ramifications arising therefrom. Once the insurance contract takes effect, however, the insured must take responsibility for his policy. We, therefore, decline to extend the duties of an insurer to provide ongoing advice concerning the limits of its coverage.

***Id.*** (citations omitted).

Here, the trial court found that Appellee did not have a duty to advise Appellants to purchase higher liability limits on their auto insurance policy, regardless of the terms in the separate homeowner's policy. (***See*** Trial Court Opinion, 2/04/16, at 13, 15). Upon review, we agree with the trial court that Appellee had no obligation to advise Appellants of a disparity in liability coverage that they should have been aware of, or to otherwise "coordinate" or "equalize" the liability limits of two different policies. To the

contrary, "[o]nce the insurance contract takes effect . . . the insured must take responsibility for his policy." **Treski**, **supra** at 1114 (citation omitted). We also observe Appellants' argument, that the two policies should have been "equalized," overlooks the salient fact that an automobile insurance policy and a homeowner's insurance policy are not coextensive and insure against very different risks. Therefore, we conclude that the trial court did not err in dismissing the negligence counts of the complaint. **See Kilmer**, **supra** at 1278. Appellants' first issue does not merit relief.

In their second issue, Appellants challenge the trial court's dismissal of the Unfair Trade Practices and Consumer Protection Law (UTPCPL) count by arguing that the court erroneously interpreted the UTPCPL's catchall provision as requiring them to allege and prove common law fraud. (**See** Appellants' Brief, at 21-26). Appellants further maintain that the court supported its finding that they failed to plead fraud by characterizing Appellee's advertising program aimed at U.S. military personnel as "commercial puffery." (**Id.** at 23; **see id.** at 25-26) (record citation omitted). We disagree.

In **Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC**, 40 A.3d 145 (Pa. Super. 2012), this Court examined the relevant standard for the UTPCPL catchall provision. The **Bennett** Court concluded:

> The UTPCPL provides a private right of action for anyone who "suffers any ascertainable loss of money or property" as a result of an unlawful method, act or practice. 73 P.S. § 201–9.2(a). Upon a finding of liability, the court has the discretion to award "up to three times the actual damages sustained" and

provide any additional relief the court deems proper. ***Id.*** Section 201–2(4) lists twenty enumerated practices which constitute actionable "unfair methods of competition" or "unfair or deceptive acts or practices." 73 P.S. § 201–2(4)(i)–(xx). The UTPCPL also contains a catchall provision at 73 P.S. § 201–2(4)(xxi). The pre–1996 catchall provision prohibited "fraudulent conduct" that created a likelihood of confusion or misunderstanding. 73 P.S. § 201–2(4)(xvii). In 1996, the General Assembly amended the UTPCPL and revised Section 201–2(4)(xxi) to add "deceptive conduct" as a prohibited practice. The current catchall provision proscribes "fraudulent **or deceptive conduct** which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201–2(4)(xxi) (emphasis added).

Pre-amendment decisions from this Court relied on the plain language of the UTPCPL to hold proof of common law fraud was necessary to state a claim under the catchall provision. . . .

\* \* \*

. . . The legislature's inclusion of "deceptive" in 1996 signaled that either fraudulent **or** deceptive conduct would constitute a catchall violation. The amendment also implied that deceptive conduct is something different from fraudulent conduct. Moreover, maintaining a standard that demands fraud even after the amendment would render the legislature's addition of "deceptive" redundant and meaningless in a manner inconsistent with well-established principles of statutory interpretation. Overlooking the addition of "deceptive" would also neglect our Supreme Court's pronouncement that courts should liberally construe the UTPCPL. For these reasons, we hold deceptive conduct which creates a likelihood of confusion or of misunderstanding can constitute a cognizable claim under Section 201–2(4)(xxi).

\* \* \*

. . . We further hold the court correctly instructed the jury on the relevant standard for the UTPCPL catchall provision, when it stated "misleading conduct" could constitute a violation[.]

***Id.*** at 151–52, 154-56 (footnote and some citations omitted; emphasis in original).

- 7 -

Here, a review of the record belies Appellants' contention that the trial court erroneously required them to establish common law fraud, in contravention of the **Bennett** decision. (**See** Appellants' Brief, at 22). Instead, the record reflects that the trial court expressly acknowledged that the UTPCPL does not require pleading or proof of fraud, and that the law prohibits fraudulent **or deceptive** conduct. (**See** Trial Ct. Op., at 15). The court concluded:

> [Appellants] have not alleged misrepresentations by [Appellee] that would a support a finding of fraud **or deception**. The Second Amended Complaint identifies [Appellee's] advertisements that service members "may trust [Appellee] to meet all their insurance needs," and that [Appellee] "would protect the insurance needs of [U.S.] military and former military personnel and their families." (Second Amended Complaint, 9/28/15, at ¶¶ 47, 54). [Appellants] make no allegations that they were lied to about the proper limits they should obtain, and the court has found that [Appellee] had no contractual or tort duty to advise them of appropriate liability limits for their needs. The statements complained of were commercial puffery, not misrepresentations of fact.

(**Id.** at 16) (record citation formatting provided; emphasis added; case citations omitted).

Thus, a review of the record indicates that the trial court was aware of the appropriate standard for the UTPCPL catchall provision, and that it did not erroneously require Appellants to plead the elements of common law fraud. Appellants' second claim does not merit relief.

In their final issue, Appellants challenge the trial court's dismissal of the Unfair Insurance Practices Act (UIPA) count by arguing that this Court

should re-examine the Pennsylvania Supreme Court's holding in *D'Ambrosio*, *supra*, that there is no private right of action under the UIPA. (*See* Appellants' Brief, at 26-33). Appellants contend that "[t]his [C]ourt should re-examine *D'Ambrosio* in the context of twenty-first century insurance industry advertising[,]" and recognize a private right of action under the UIPA. (*Id.* at 32; *see id.* at 33). This issue does not merit relief.

We begin by observing the well-settled principle that this Court is bound by existing precedent. *See Bell v. Willis*, 80 A.3d 476, 479 (Pa. Super. 2013), *appeal denied*, 89 A.3d 1282 (Pa. 2014) ("As an intermediate appellate court, this Court is obligated to follow the precedent set down by our Supreme Court. It is not the prerogative of an intermediate appellate court to enunciate new precepts of law or to expand existing legal doctrines.") (citations omitted).

With respect to the UIPA, this Court has explained:

> The purpose of the UIPA is
>
>> to regulate trade practices in the business of insurance in accordance with the intent of congress . . . by defining or providing for the determination of all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined.
>
> 40 P.S.A. § 1171.2. Thus, "[n]o person shall engage in this state in trade practice which is defined or determined to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance pursuant to [the UIPA]." 40 P.S.A. § 1171.4. These statutory provisions are enforced by the Pennsylvania Insurance Commissioner who is empowered "to examine and investigate the affairs of every person engaged in

> the business of insurance in this state" to determine whether the UIPA has been violated. 40 P.S.A. § 1171.7. If, after an investigation, the Insurance Commissioner has a good faith belief that a person has violated the UIPA, an administrative hearing is to be held before the Commissioner. If the Commissioner determines that a violation occurred, he may impose sanctions, including a cease and desist order or the suspension or revocation of the person's license. 40 P.S.A. § 1171.9. The Commissioner may also seek civil penalties. 40 P.S.A. § 1171.11.

*Jones v. Nationwide Prop. & Cas. Ins. Co.*, 995 A.2d 1233, 1236 (Pa. Super. 2010), *aff'd on other grounds*, 32 A.3d 1261 (Pa. 2011).

In *D'Ambrosio*, our Supreme Court noted that the UIPA is to be enforced by the Insurance Commissioner, and held that no private right of action was created by the UIPA. *See D'Ambrosio*, *supra* at 969-70. It stated:

> There is no evidence to suggest, and we have no reason to believe, that the system of sanctions established under the Unfair Insurance Practices Act must be supplemented by a judicially created cause of action. . . . Surely it is for the Legislature to announce and implement the Commonwealth's public policy governing the regulation of insurance carriers. In our view, it is equally for the Legislature to determine whether sanctions beyond those created under the Act are required to deter conduct which is less than scrupulous.

*Id.* at 970; *see also Jones supra*, at 1236 ("The UIPA does not create a private cause of action.") (citation omitted).

Here, although Appellants urge this Court to reconsider the *D'Ambrosio* holding, we decline to do so, and reiterate that as an intermediate appellate court, we are bound to follow existing precedent.

*See Bell*, *supra* at 479. Therefore, Appellants' final issue on appeal does not merit relief. Accordingly, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/5/2017